PEOPLE v McQUILLAN

OPINION OF THE COURT

1. MENTAL HEALTH—COURTS—CIRCUIT COURT—JURISDICTION—JUDG-
   MENTS—ORDERS—COURT RULES—NEW TRIAL—DISCRETION—
   CONSTITUTIONAL LAW—AUTOMATIC COMMITMENT STATUTE—AC-
   QUITTAL BY REASON OF INSANITY.

   A circuit court properly assumed jurisdiction to review the consti-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments § 671 *et seq.*

[2, 3, 5, 6, 8, 10, 11, 13–16, 18, 20, 24] 21 Am Jur 2d, Criminal Law
   §§ 55–60.

37 Am Jur 2d, Habeas Corpus § 87.

41 Am Jur 2d, Incompetent Persons §§ 34, 39, 40.

Validity of statutory provision for commitment to mental institu-
   tion of one accused of crime on ground of insanity without formal
   determination of mental condition at time of acquittal. 50 ALR3d
   144.

Release of one committed to institution as consequence of acquittal
   of crime on ground of insanity. 95 ALR2d 54.

Test or criterion of mental condition within contemplation of stat-
   ute providing for commitment of persons because of mental
   condition. 158 ALR 1220.

Constitutionality of statute which provides for commitment of
   accused acquitted on ground of insanity to hospital for insane
   without examination of present mental condition. 145 ALR 892.

[4, 9, 20] 21 Am Jur 2d, Criminal Law §§ 55–60.

41 Am Jur 2d, Incompetent Persons §§ 39, 40, 41.

[7] 21 Am Jur 2d, Criminal Law §§ 50–52, 56.

Presumption of continuing insanity as applied to accused in crimi-
   nal case. 27 ALR2d 121.

[12] 16 Am Jur 2d, Constitutional Law § 137 *et seq.*

73 Am Jur 2d, Statutes §§ 37, 42, 103, 123.

[15] 21 Am Jur 2d, Criminal Law §§ 54, 56, 58, 60, 61, 78.

39 Am Jur 2d, Habeas Corpus §§ 60, 86.

[17, 18] 41 Am Jur 2d, Incompetent Persons § 31.

[19] 41 Am Jur 2d, Incompetent Persons §§ 15–18.

Right to counsel in insanity or incompetency adjudication proceed-
   ings. 87 ALR2d 950.

Constitutional right to jury trial in proceeding for adjudication of
   incompetency or insanity or for restoration. 33 ALR2d 1145.

[21, 22] 2 Am Jur 2d, Administrative Law § 776 *et seq.*

[23] 5 Am Jur 2d, Appeal and Error § 760.

tutionality of the statute requiring the automatic commitment to the Department of Mental Health of a person acquitted of a crime by reason of insanity upon defendant's motion to vacate his commitment ordered by that court almost two years earlier because a circuit court pursuant to a court rule may modify a final judgment, order or proceeding on a motion for the reason that the judgment is void or any other reason justifying relief from the operation of the judgment and a trial judge has "inherent power" to consider a delayed motion for a new trial in a case that was heard before him; this is an inherent judicial function, the exercise of which rests within the sound judicial discretion of a trial judge to so grant when justice requires, and the Michigan Supreme Court has not, and will not, infringe upon his time-honored and necessary judicial prerogative, except for an abuse of judicial discretion (MCLA 767.27b).

2. MENTAL HEALTH—COMMITMENT—HOSPITALS—NOTICE—HEARING.

Commitment to a mental hospital is deprivation of liberty and commitment may not be accomplished without proper notice and hearing to determine mental incompetence.

3. CONSTITUTIONAL LAW—FOURTEENTH AMENDMENT—AUTOMATIC COMMITMENT—PRECEDENT.

Given the expanded interpretation of Fourteenth Amendment rights in the setting of an automatic commitment to the Department of Mental Health of a person acquitted of a crime by reason of insanity, *People v Dubina,* 304 Mich 363 (1943), is no longer controlling precedent.

4. MENTAL HEALTH—CRIMINAL CONDUCT—INSANITY—TEMPORARY DETENTION—PERMANENT DETENTION—DUE PROCESS—EQUAL PROTECTION.

Past criminal conduct caused by insanity justifies temporary detention for examination but it does not justify permanent detention; neither due process nor equal protection prohibit those acquitted by reason of insanity from being temporarily detained for a reasonable period of examination.

5. MENTAL HEALTH—AUTOMATIC COMMITMENT STATUTE—TEMPORARY DETENTION—NOTICE—HEARING.

Statute requiring the automatic commitment to the Department of Mental Health of a person acquitted of a crime by reason of insanity legitimately calls for automatic temporary detention for a period of time to examine and determine a defendant's present mental condition and a reasonable period for such

examination detention may be 60 days; however, upon completion of the examination and observation, notice and hearing must follow forthwith (MCLA 767.27b).

6. CONSTITUTIONAL LAW—DUE PROCESS—HEARING.

One long-established basic guarantee of due process is the right to a hearing prior to deprivation of liberty.

7. CRIMINAL LAW—ACQUITTAL BY REASON OF INSANITY—PRESUMPTIONS—INSANITY.

All that an acquittal by reason of insanity establishes in law in Michigan is that the people have failed to prove beyond a reasonable doubt that the defendant was competent at the time he committed the crime which might have been months before; thus, the use of a presumption of continuing insanity arising from a verdict of not guilty by reason of insanity is not justified where there never has been a finding of insanity.

8. MENTAL HEALTH—DUE PROCESS—ACQUITTAL BY REASON OF INSANITY—SANITY HEARING—COMMITMENT.

Due process requires a sanity hearing for those found not guilty by reason of insanity after the completion of examination and observation; a defendant who was insane for the purpose of responsibility at the time of the offense may not be insane for the purpose of civil commitment at the time of the verdict.

9. MENTAL HEALTH—CIVIL COMMITMENT—COMMITMENT OF CRIMINALS—TEMPORARY DETENTION.

The differences in class between mentally ill persons civilly committed and those criminally committed justify a period of temporary detention for examination of those criminally committed.

10. CONSTITUTIONAL LAW—EQUAL PROTECTION—CIVIL COMMITMENT—ACQUITTAL BY REASON OF INSANITY.

Equal protection demands that differences in treatment of classes be based on a rational basis; therefore, where the state has provided a full range of judicial protection to determine the competency of all civilly committed, it may not deny those rights to a person found not guilty by reason of insanity.

11. MENTAL HEALTH—EQUAL PROTECTION—SANITY HEARING—ACQUITTAL BY REASON OF INSANITY.

Based on equal protection of the laws, a defendant is entitled to a sanity hearing when found not guilty by reason of insanity after completion of observation and examination.

12. STATUTES—PRESUMPTIONS—CONSTRUCTION—CONSTITUTIONAL LAW.

It is the duty of the Michigan Supreme Court to give the presumption of constitutionality to a statute and construe it as constitutional unless the contrary clearly appears.

13. MENTAL HEALTH—AUTOMATIC COMMITMENT STATUTE—ACQUITTAL BY REASON OF INSANITY—HEARING.

Nothing in the statute requiring the automatic commitment to the Department of Mental Health of a person acquitted of a crime by reason of insanity precludes a hearing before commitment of a person found not guilty by reason of insanity but since United States Supreme Court decisions require one, the Michigan Supreme Court deems it necessarily implicit in that statute (MCLA 767.27b).

14. MENTAL HEALTH—DUE PROCESS—ACQUITTAL BY REASON OF INSANITY—SANITY HEARING—EQUAL PROTECTION—CIVIL COMMITMENT—STATUTES.

Due process requires that a defendant found not guilty by reason of insanity be given a sanity hearing before commitment to determine present mental condition and equal protection requires that the hearing be substantially similar to other commitment proceedings of mentally ill persons; neither due process nor equal protection prohibit those acquitted by reason of insanity from being temporarily detained for a reasonable period for examination; exact equality of procedures is not necessary and the procedures need only be substantially similar with different treatment permissible to the extent that there are relevant differences between these two groups; therefore, after examination and observation within the initial 60-day period of temporary detention the defendant is entitled to a full hearing identical with the usual civil commitment hearing provided by statute (MCLA 330.21, 767.27b).

15. MENTAL HEALTH—AUTOMATIC COMMITMENT STATUTE—ACQUITTAL BY REASON OF INSANITY—CIVIL COMMITMENT—EQUAL PROTECTION—HABEAS CORPUS.

By expressly referring to the provisions for release from civil commitment in the statute requiring the automatic commitment to the Department of Mental Health of a person acquitted of a crime by· reason of insanity the Legislature intended to provide these release remedies to those criminally committed; however, in the statute concerning discharge from civil commitment the Legislature has also stated that "[t]he foregoing provisions [for release from civil commitment] do not apply to patients in the Ionia state hospital who have been committed

by a court of criminal jurisdiction"; the quoted language offends equal protection of the laws as it would prohibit those criminally committed from using the civil release provisions without a rational basis for the difference in release provisions, and the fact that habeas corpus still exists as a possible method of release does not in itself mean that the release procedures are constitutionally adequate (MCLA 330.35, 767.27b).

16. MENTAL HEALTH—STATUTES—CIVIL COMMITMENT—CRIMINAL LAW.

Michigan Supreme Court should strike the constitutionally repugnant sentence that "[t]he foregoing provisions do not apply to patients in the Ionia state hospital who have been committed by a court of criminal jurisdiction" from a statute concerning discharge from civil commitment; the striking of that sentence leaves the remainder of the statute completely independent and capable of execution (MCLA 330.35).

17. MENTAL HEALTH—CIVIL PROCESS—COMMITMENT—STATUTES—PROBATE COURT—HEARING—JURISDICTION.

The only civil process for commitment to a mental institution provided by statute is a probate court civil commitment hearing; as to these matters, the probate court's jurisdiction is original and exclusive (MCLA 330.21, 330.35, 330.39, 330.68).

18. MENTAL HEALTH—COMMITMENT—ACQUITTAL BY REASON OF INSANITY—CIRCUIT COURT—JURISDICTION—REMAND—PROBATE COURT —SANITY HEARING—CIVIL COMMITMENT.

Since a circuit court had no jurisdiction to commit to a mental institution, the commitment trial by a circuit judge was without authority of law; the proper action by the trial judge where defendant was acquitted of a crime by reason of insanity and later filed a delayed motion to vacate the commitment order would have been to remand the action to the probate court for a sanity hearing per the procedures followed for civil commitment.

19. MENTAL HEALTH—CIVIL COMMITMENT—DUE PROCESS—NOTICE— HEARING—ATTORNEY AND CLIENT—JURY.

A prosecutor undertaking to bring a civil commitment action shall in addition to the statutory procedures contain the following in his action: (1) notice to the potential committee by serving him the petition or a copy thereof sufficiently in advance of the hearing; (2) advising the potential committee at the outset of the proceedings that he has the right to legal counsel and, if indigent, to appointed counsel, to assist him at the proceedings; (3) presence of the potential committee at the

hearing unless his conduct is so disruptive that proceedings cannot continue in any reasonable manner and only after some alternative to total exclusion is first attempted; (4) notification to the potential committee of his right to demand a jury; such procedure would comply with Federal requirements for due process in civil commitment procedures.

20. MENTAL HEALTH—DUE PROCESS—EQUAL PROTECTION—TEMPORARY DETENTION—ACQUITTAL BY REASON OF INSANITY—PROSPECTIVE EFFECT.

Neither due process nor equal protection prohibit a period of temporary statutory detention for examination and observation of one found not guilty by reason of insanity; however, upon completion of the examination and observation, due process and equal protection require that a defendant found not guilty by reason of insanity must have the benefit of commitment and release provisions equal to those available to those civilly committed; the ruling as to such automatic commitment procedures is to have prospective effect only; except that any already detained for more than 60 days without examination and observation shall be given examination and observation within the 60 days from the date of this opinion and thereupon noticed for hearing within the next 10 days or discharged; the ruling as to release procedures applies immediately to all those committed under a statute requiring the automatic commitment to the Department of Mental Health of a person acquitted of a crime by reason of insanity (MCLA 767.27b).

DISSENTING OPINION

LEVIN, J.

21. COURTS—CRIMINAL LAW—JUDICIAL INTERVENTION—IRREPARABLE HARM—STATE AGENCY—PARTIES.

*Absent a showing that judicial intervention is necessary to prevent immediate and irreparable harm to the complainant, a sentencing court may not properly issue a directive concerning procedures to be followed by a state agency located in another county, physical custody of the complainant having been lawfully transferred to the state agency by the sentencing court, the state agency not being a party to the proceeding.*

22. COURTS—STATE INSTITUTION—IRREPARABLE HARM—CRIMINAL LAW —PROTECTIVE ORDER.

*A sentencing judge confronted with a showing that conditions at a state institution located in another county represent an immediate threat of irreparable harm to a convicted person*

*might be constrained to enter a protective order; such action would be appropriate only if the court in the other county could not be relied upon to act expeditiously.*

23. MENTAL HEALTH—SANITY HEARING—ACQUITTAL BY REASON OF INSANITY—MOOT QUESTION.

*The question whether defendant was entitled to a sanity hearing within 60 days after acquittal by reason of insanity was moot 22 months before he filed his delayed motion to vacate commitment order.*

24. MENTAL HEALTH—CONSTITUTIONAL LAW—INSANITY—ACQUITTAL BY REASON OF INSANITY—COMMITMENT—STATUTES—SANITY HEARING.

*Whatever constitutional deficiencies there may be in the statutory commitment and release procedures, a defendant, who was found not guilty by reason of insanity and committed to the Department of Mental Health, is entitled to no relief until he seeks and is denied a sanity hearing.*

Appeal from Wayne, Horace W. Gilmore, J., and from Court of Appeals prior to decision. Submitted April 3, 1974. (No. 11 April Term 1974, Docket No. 54,613.) Decided September 6, 1974.

James Chester McQuillan was charged with assault with intent to rape and indecent liberties. Defendant found not guilty by reason of insanity and committed to Department of Mental Health pursuant to automatic commitment statute. Defendant's motion to vacate commitment order granted, and sanity hearing ordered. Defendant ordered discharged from custody. The people appealed to the Court of Appeals and applied to the Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Remanded to trial court for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J.*

*Boyle,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Steven L. Schwartz),* for defendant on appeal.

Amicus Curiae: *Peter M. Alter,* for American Civil Liberties Union of Michigan.

Williams, J. The major issue in this case is whether the automatic commitment statute, MCLA 767.27b; MSA 28.966(12)[1] is unconstitutional in that automatic commitment deprives one found not guilty by reason of insanity of (1) due process by lack of a hearing on present sanity before commitment or within a reasonable time thereafter and/or (2) equal protection of the laws by not providing similar commitment and release procedures found in other *(e.g.* civil) commitment proceedings.[2]

Specifically this opinion considers the following issues in order:

(1) Does a circuit court, upon motion, have jurisdiction to review the constitutionality of its commitment almost two years earlier of a defendant it found not guilty by reason of insanity?

---

[1] MCLA 767.27b; MSA 28.966(12) states:

"Any person, who is tried for a crime and is acquitted by the court or jury by reason of insanity, shall be committed immediately by order of the court to the department of mental health for treatment in an appropriate state hospital, until discharged in accordance with Act No. 151 of the Public Acts of 1923, as amended. The person shall not be released on convalescent care or final discharge without first being evaluated and recommended for release by the center for forensic psychiatry."

[2] For a background into the problems posed by automatic commitment statutes generally *see: Compulsory Commitment Following A Successful Insanity Defense,* 56 Nw UL Rev 409 (1961); *Commitment Following Acquittal by Reason of Insanity and the Equal Protection of the Laws,* 116 U Pa L Rev 924 (1968).

(2) Does the automatic commitment statute deny equal protection and due process under the Fourteenth Amendment for failure to provide notice and hearing prior to temporary detention?

(3) Does the automatic commitment statute permit detention without notice and hearing within a reasonable time after commitment and thereby deny due process and equal protection under the Fourteenth Amendment?

(4) Does the automatic commitment statute fail to provide equal protection of the laws in failing to provide the same type of release procedure for those committed under its act as for those otherwise (*e.g.* civilly) committed?

(5) Was there a proper commitment hearing?

## I —FACTS

Defendant James McQuillan was charged with assault with intent to rape and indecent liberties in connection with a sexual attack on a minor female. The matter was assigned to the Honorable Horace Gilmore, Wayne County Circuit Judge, who ordered defendant committed to the Forensic Center for a competency determination. After evaluation, at a hearing on February 19, 1970, defendant was held competent to stand trial. Defendant was found not guilty by reason of insanity in a trial by the court on March 17, 1970. Pursuant to MCLA 767.27b; MSA 28.966(12) defendant was automatically committed for an indeterminate period to the Department of Mental Health by order of Judge Gilmore on March 24, 1970.

Defendant was subsequently confined in the Ionia State Hospital and there remained for nearly two years without evaluation or recommendation for release by the Forensic Center, the conditions

precedent to either his release on convalescent care or complete discharge.

In March 1972, while defendant was yet in custody of the Department of Mental Health, pursuant to Judge Gilmore's order of commitment, defendant, by the office of State Appellate Defender, filed before Judge Gilmore a pleading entitled "Delayed Motion to Vacate Commitment Order". Oral argument was had, the matter was taken under advisement, and on June 27, 1972, Judge Gilmore vacated the order of defendant's commitment. In the opinion published by the trial court supporting its decision, Judge Gilmore found that the automatic commitment statute (MCLA 767.27b; MSA 28.966[12]) was constitutionally deficient in failing to provide substantially equal treatment in terms of commitment and release procedures to those committed "criminally" as accorded to those committed "civilly". As to due process Judge Gilmore found:

"The commitment is further constitutionally deficient because of the due process clause of the Fourteenth Amendment. *Specht [v Patterson,* 386 US 605; 87 S Ct 1209; 18 L Ed 2d 326 (1967)] controls here. Due process requires a full hearing on the crucial issue—was the defendant so mentally ill at that time as to require commitment to a mental institution? No hearing is held on that issue under MCLA 767.27(b)."

Having found the procedure under which defendant was committed lacking in constitutional protections, the trial court sought to fashion a proceeding according such protections to defendant and held a sanity hearing on December 18, 1972. Defendant was adjudicated sane and permanently discharged from custody of the Department of Mental Health on or about December 21, 1972.

From Judge Gilmore's consideration and grant-

ing of defendant's motion to vacate the commitment order and the judge's subsequent finding of sanity at a special hearing the prosecution appealed. Leave was granted by the Court of Appeals and a stay of proceedings was ordered. Defendant's application for bypass was granted by this Court on April 27, 1973. 389 Mich 786.

This Court is pleased to note that the appellate presentation of the case by prosecution and defense counsel was of high merit and they are to be commended for it. We were also aided in our decision by the comprehensive, well-reasoned opinion by Circuit Judge Gilmore. Finally we are grateful for the helpful brief of the amicus curiae.

## II —JURISDICTION TO REVIEW CONSTITUTIONALITY ON DELAYED ORDER (ISSUE 1)

The prosecution contended the Wayne Circuit Court which automatically committed defendant had no jurisdiction to consider a delayed motion to vacate. They contended the motion questioned the legality of defendant's commitment and was therefore in reality an action of habeas corpus, venue for which would be in the county of detention, Ionia.

There was, and can be, no contention that the Wayne Circuit Court did not have original jurisdiction in this case.

MCLA 600.601; MSA 27A.601 provides:

"Circuit courts have the power and jurisdiction

* * *

"(3) prescribed by rule of the supreme court."

The Supreme Court by GCR 1963, 528 provides

the circuit court may modify previous judgments or orders pertinently as follows:

".3 On motion * * * , the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (4) the judgment is void * * * or (6) any other reason justifying relief from the operation of the judgment."

In *Attorney General v Recorder's Court Judge*, 341 Mich 461, 472; 67 NW2d 708 (1954) we held that a trial judge has "inherent power" to consider a delayed motion for a new trial in a case that was heard before him. It was stated that this "is an inherent judicial function, the exercise of which rests within the sound judicial discretion of a trial judge to so grant when justice requires. This Court has not, and will not, infringe upon this time-honored and necessary judicial prerogative, except for an abuse of judicial discretion."

The policy underlying the judicial power, delineated above, to reform erroneous judgments and/or orders is well stated by the ABA Standards For Criminal Justice:

"Little would seem to be served by freezing a decision that later turns out to have been erroneous. Provision that the sentencing court can undo what hindsight has demonstrated to have been a mistake seems the least that is due the victim." ABA Standards, ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, (Approved Draft, 1968), p 280.

For the reasons set forth above we hold that the Wayne Circuit Court properly assumed jurisdiction to review the constitutionality of the automatic

commitment statute by which defendant had been committed.[2.5]

## III —PERTINENT FEDERAL DUE PROCESS & EQUAL PROTECTION AUTHORITY

The United States Supreme Court has made it clear that commitment to a mental hospital is deprivation of liberty. Commitment may not be accomplished without proper notice and hearing to determine mental incompetence.

### Equal Protection

The leading case is *Baxstrom v Herold,* 383 US 107; 86 S Ct 760; 15 L Ed 2d 620 (1966). Baxstrom, while serving a sentence in a New York prison, was certified insane by a prison psychiatrist and thereupon transferred to the Dannemora State Hospital, a mental institution under the jurisdiction of the New York Department of Correction. At the expiration of his sentence, a civil commitment was sought pursuant to § 384 of the New York Correction Law, and that commitment was ordered by a surrogate after a sanity hearing. Baxstrom's custody was moved from the Department of Correction to the Department of Mental Hygiene again. He, however, remained at Dannemora State Hospital upon the administrative decision of the Commission of Mental Hygiene, as allowed by § 384. He challenged the above procedure by petitioning for habeas corpus.

---

[2.5] A judge certainly has jurisdiction to review whether he had authority to commit a person to an institution. This obviously is an altogether different thing from the same judge reviewing whether "rules or practices of the correctional authorities deny him constitutional rights" after he is properly "committed" there, although Justice LEVIN in his opinion indicates that our analysis would justify that. It doesn't.

In a unanimous opinion the United States Supreme Court held that Baxstrom was denied equal protection of the laws because, solely on the basis that he was nearing the expiration of his prison term, he was not afforded a jury review of his initial commitment hearing as others civilly committed were afforded and, because once committed, he was transferred from an institution under the control of the Department of Mental Hygiene to an institution under the control of the Department of Correction for the criminally insane without any hearing concerning his present dangerousness, while others who were civilly committed could be similarly transferred only after it has been determined at a judicial hearing that they were dangerous.

### Due Process

In the leading case of *Specht v Patterson,* 386 US 605; 87 S Ct 1209; 18 L Ed 2d 326 (1967), the petitioner was convicted in a Colorado state court of a sex offense for which the maximum sentence of ten years could be imposed. The trial judge, acting pursuant to the Colorado sex offenders act, summarily committed Specht. Though psychiatric reports were received the judge granted the petitioner no hearing or right of confrontation with respect to those reports. With no challenge allowed, he determined that Specht constituted a threat of bodily harm to members of the public, or was an habitual offender and mentally ill, and sentenced him to an indeterminate sentence of from one day to life. The United States Supreme Court reversed, holding that the failure to grant full procedural safeguards, including the right of confrontation, violated due process requirements of the Fourteenth Amendment:

"Under Colorado's criminal procedure, here challenged, the invocation of the Sex Offenders Act means the making of a new charge leading to criminal punishment. The case is not unlike those under recidivist statutes where an habitual criminal issue is 'a distinct issue' * * * on which a defendant 'must receive reasonable notice and an opportunity to be heard'. * * * Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed. * * * None of these procedural safeguards * * * is present under Colorado's Sex Offenders Act. We therefore hold that it is deficient in due process as measured by the requirements of the Fourteenth Amendment." 386 US 605, 610–611. (Citations omitted.)

We are cognizant of the case cited to us by the prosecutor of *People v Dubina,* 304 Mich 363; 8 NW2d 99 (1943) where this Court upheld the constitutionality of the predecessor automatic commitment statute over a claim of denial of due process. This opinion was prior to the present commitment statute and to the United States Supreme Court opinions in *Specht* and *Baxstrom.* *Specht* set down certain minimal requirements of due process that were not required at the time of *Dubina.* Given the expanded interpretation of Fourteenth Amendment rights in the automatic commitment setting, we feel *Dubina* is no longer controlling precedent.

## IV —CONSTITUTIONALITY OF TEMPORARY DETENTION (ISSUE 2)

Under MCLA 767.27b; MSA 28.966(12):

"Any person, who is tried for a crime and is acquitted by the court or jury by reason of insanity, shall be

committed immediately by order of the court to the department of mental health for treatment in an appropriate state hospital, * * * ."

It is argued by the people that the language of immediate commitment in the statute should be construed as immediate, temporary detention which does not offend due process or equal protection.

In *Bolton v Harris,* 130 US App DC 1; 395 F2d 642 (1968), while holding that persons found not guilty by reason of insanity must be given a judicial hearing with procedures substantially similar to those in civil commitment proceedings, the Court, per Chief Judge Bazelon, stated:

"[C]ommitment without a hearing is permissible for the period required to determine present mental condition. The jury's finding of a reasonable doubt as to defendant's sanity at the time of the offense provides sufficient warrant for further examination." 130 US App DC 1, 10; 395 F2d 642, 651.

*Bolton* was cited with approval as a legitimate extension of the *Baxstrom* principles in *Jackson v Indiana,* 406 US 715, 724; 92 S Ct 1845; 32 L Ed 2d 435 (1972).

See supporting authority in *People v Lally,* 19 NY2d 27; 224 NE2d 87 (1966); *State v Clemons,* 110 Ariz 79; 515 P2d 324 (1973); *In re Franklin,* 7 Cal 3d 126; 101 Cal Rptr 553; 496 P2d 465 (1972); 56 Nw UL Rev 409, 443–445, 458 (1961); 11 Wm & Mary L Rev 185, 197–198 (1966).

"This conclusion [that temporary criminal detention does not afford equal protection of the laws], however, does not mean that the state must necessarily afford acquitted defendants procedures identical with those afforded civil defendants. In order to protect society, some divergence is justified. To the extent that those

acquitted by reason of insanity have more clearly than others demonstrated the likelihood of present dangerousness, different treatment is warranted. Even assuming that both classes deserve an equal degree of protection, there remains the possibility that the state may vary the precise procedural formats to foster administrative convenience so long as the end result is substantial equivalence." 116 U Pa L Rev 924, 940 (1968).

We agree that past criminal conduct caused by insanity justifies temporary detention for examination. It does not justify permanent detention. We believe that neither due process nor equal protection prohibit those acquitted by reason of insanity from being temporarily detained for a reasonable period for examination.

While those civilly committed must be given a hearing prior to any commitment there exists significant relevant differences between those civilly and criminally committed. The fact that the judge or jury found a reasonable doubt as to defendant's sanity at the time of the offense and the possibility existed that defendant still may be unstable and commit another offense provides sufficient reason for holding for further examination. Defendant in fact concedes this point in his brief. He states:

"The trial court's verdict in this case implied a doubt as to sanity in the not-too-distant past. This doubt, when coupled with any inference of dangerousness Defendant's past criminal conduct will support, may be a constitutionally sufficient justification for temporary incarceration until there has been a reasonable time to determine whether the defendant continues to be mentally ill."

Further, "a hearing would be meaningless until trained medical experts had a reasonable opportunity to observe and examine the subject and report

their findings. Hence some time gap between the verdict and the appraisal of the defendant's then-existing mental condition is unavoidable under any scheme which would provide adequate safeguards." *Ragsdale v Overholser,* 108 US App DC 308, 313; 281 F2d 943, 948 (1960).

We believe this to be a judicious weighing of the public's right to be protected from possibly dangerous mentally ill persons against the individual defendant's right to be protected against unjustified commitment.

Therefore, we believe the statute legitimately calls for automatic temporary detention for a period of time to examine and determine defendant's present mental condition. A reasonable period for such examination detention may be 60 days. The *Bolton* Court did not choose to set a definite time limit for temporary commitment. They stated:

"The length of time required for such examination will vary, of course, with the individual case. It will be the responsibility of the court to establish this period, * * * ." 130 US App DC 1, 10; 395 F2d 642, 651.

Section 1026a of the California Penal Code requires a minimum 90-day period of confinement prior to hearing. The California Supreme Court in *In re Franklin,* 7 Cal 3d 126; 101 Cal Rptr 553; 496 P2d 465 (1972) held that this 90-day period did not offend due process as it was well within the 6-month period as recommended by § 4.08 of the Model Penal Code. The code commentators believed that this period was necessary for initial observation. 496 P2d 465, 469. See also *The Confinement & Release of Persons Acquitted by Reason of Insanity,* 4 Harv J Legis 55, 56–66 (1966) and *The Virginia Procedure for Commitment &*

*Release of Persons Acquitted by Reason of Insanity*, 11 Wm & Mary L Rev 185, 197–198 (1969) where two commentators have concurred that a 90-day period of observation is appropriate in these cases.

In a recorded survey of hospital superintendents asked for their own "recommended period of observation and examination necessary for accurate diagnosis", the responses ranged from "many, many hours" to "1 year" while 4 of the 11 doctors surveyed preferred a period within the 30-day (or 1 month or 4 week) range. See 56 Nw UL Rev 409, 466, Table c.

We choose to follow a middle ground of allowing 60 days for examination and observation. However, upon completion of the examination and observation notice and hearing must follow forthwith. We find this to be a legitimate balance between an individual's liberty, protection of society and adequate time for the psychiatrist to form an accurate diagnosis. This 60-day standard is one we adopt on a temporary basis until the Legislature speaks to the problem or the matter is briefed and argued before this Court.[3]

## V —CONTINUED DETENTION WITHOUT NOTICE & HEARING (ISSUE 3)

After the conclusion of examination and observation must the defendant have notice and hearing as to his present mental condition? At present

---

[3] The problems of prolonged detention prior to preliminary commitment hearing were aptly raised in *Bell v Wayne County General Hospital*, 384 F Supp 1085 (ED Mich, 1974) where the three-judge Federal panel felt five days was an appropriate detention period. The court clearly stated that its opinion was concerned with only certain aspects of the civil commitment process. Temporary detention time limits prior to hearing in the case of criminal commitment were consequently not covered in that opinion.

the automatic commitment statute does not provide for such a hearing in so many words.

It was held by Judge Gilmore that such commitment procedures violated both due process and equal protection of the laws under the Fourteenth Amendment unless construed to provide a hearing of the question of present mental condition.

## A. Due Process

It is claimed by defendant that the statute violates due process in that no hearing was held to determine defendant's present mental condition and need to be institutionalized when found not guilty by reason of insanity. It is argued that the fact that there was reasonable doubt as to defendant's sanity when he committed the act could not be viewed as conclusive that he was still not mentally competent at the time he was found not guilty by reason of insanity.

The prosecution has argued among other things that the statute does not foreclose a hearing but merely allows commitment for a brief period in which to determine defendant's present mental condition. The prosecution has also cited three cases from foreign jurisdictions for our consideration, *State ex rel Schopf v Schubert,* 45 Wis 2d 644; 173 NW2d 673, 677 (1970); *Daniels v O'Connor,* 243 So 2d 144 (Fla, 1971) and *Chase v Kearns,* 278 A2d 132 (Me, 1971). These three cases generally stand for the proposition that automatic commitment is valid for temporary detention and are distinguished from *Baxstrom* as cases involving a reasonable classification. With this we agree. These cases also recognize, in one degree or another, that upon commitment the committee is entitled to adjudication of his present sanity.

Due process analysis focuses on the question of

which rights and protections are essential to constitutional procedure in a given situation. One long-established basic guarantee of due process is the right to a hearing prior to deprivation of liberty. *Boddie v Connecticut,* 401 US 371; 91 S Ct 780; 28 L Ed 2d 113 (1971).

As Judge Gilmore correctly pointed out, in Michigan "[a]ll that an acquittal by reason of insanity establishes in law is that the People have failed to prove beyond a reasonable doubt that the defendant was competent at the time he committed the crime which might have been months before."

Thus, the use of a presumption of continuing insanity arising from a verdict of not guilty by reason of insanity is not justified where there never has been a finding of insanity.

In *Specht* there was a reasonable statutory presumption that a person convicted of indecent liberties constituted (in the words of the Colorado statute) "a threat of bodily harm to members of the public * * * ". Nevertheless the United States Supreme Court required a full hearing.

Similarly in *Bolton v Harris,* 130 US App DC 1; 395 F2d 642 (1968), the Court of Appeals found that the automatic commitment statute for the District of Columbia was constitutionally deficient. It stated:

"Subsection (d) [of the D.C. statute] provides for automatic commitment without any hearing, even though acquittal by reason of insanity reflects only a reasonable doubt that the defendant was sane at the time of the offense. * * * [T]he defense may be based merely upon 'some' evidence, said to be 'more than a scintilla' but not necessarily enough to raise a reasonable doubt of sanity. The plea is neither an express nor implied admission of present illness, and acquittal rests only on a reasonable doubt of *past* sanity, *i.e.,* at the time of the offense. * * * After acquittal by reason of insanity

there is \* \* \* need for a new finding of fact: The trial determined only that there was a reasonable doubt as to defendant's sanity in the past, present commitment is predicated on a finding of present insanity. Thus *Specht* would appear to require that this finding be made in a hearing." 130 US App DC 1; 395 F2d 642, 648–650.

To quote from Judge Gilmore's opinion:

"*Specht* summarizes fundamental due process requirements. No person can be confined or committed without a full judicial hearing in which the legal basis for this commitment *at the time of the commitment* is established under settled rules of law with full procedural due process."

This principle of *Specht* was affirmed in *Jackson v Indiana,* 406 US 715, 737–738; 92 S Ct 1845; 32 L Ed 2d 435 (1972). In *Jackson,* it was determined that the defendant was incompetent to stand trial and was summarily committed until he regained his sanity. Finding this procedure to violate due process of laws, the United States Supreme Court stated:

"It is clear that Jackson's commitment rests on proceedings that did not purport to bring into play, indeed did not even consider relevant, *any* of the articulated bases for exercise of Indiana's power of indefinite commitment. The state statutes contain at least two alternative methods for invoking this power. *But Jackson was not afforded any 'formal commitment proceedings addressed to [his] ability to function in society,' or to society's interest in his restraint,* or to the State's ability to aid him in attaining competency through custodial care or compulsory treatment, the ostensible purpose of the commitment. At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." (Emphasis added.)

Based on *Specht, Jackson* and *Bolton* we hold that due process requires a sanity hearing for those found not guilty by reason of insanity after the completion of examination and observation. A defendant who was insane for the purpose of responsibility at the time of the offense may not be insane for the purpose of civil commitment at the time of the verdict.

## B. Equal Protection

The basis of the equal protection claim advanced by defendant is that there is no rational basis[4] for subjecting those found not guilty by reason of insanity to a more lenient commitment procedure than those otherwise committed.[5] The prosecution has argued that the differences in commitment procedures are rationally based on the fact that those in defendant's class have committed a socially harmful act because of their mental condi-

---

[4] We acknowledge the premise of the amicus equal protection position that since a "fundamental interest" (defendant's liberty) is involved, the state must have a "compelling state interest" to justify the differences in treatment. However, as we believe the "rational basis" test is not met here, discussion of "compelling state interest" is unnecessary.

[5] In contrast to the situation faced by defendant, those committed civilly are afforded an impressive array of procedural safeguards. MCLA 330.21; MSA 14.811 provides that, prior to commitment, an alleged mentally diseased person is entitled to a full hearing in probate court on the issue of his present mental status. In connection with this hearing, he may have a jury as a finder of fact, an examination by at least two reputable physicians and be represented by an attorney or guardian ad litem.

Those alleged to be incompetent to stand trial are likewise afforded more procedural protections prior to commitment than those found not guilty by reason of insanity. MCLA 767.27a; MSA 28.966(11) provides that a certified opinion by the Department of Mental Health that the defendant will not regain competence, in addition to a detailed psychiatric report, shall act as equivalents to a petition and physicians' report under MCLA 330.21; MSA 14.811, the civil commitment statute. Thereafter the probate court shall proceed to determine the matter as provided in that section, MCLA 330.21; MSA 14.811, before it may commit the defendant.

tion thus justifying, on the basis of public safety, a more lenient commitment standard.

We have held that the differences in class between those civilly committed and those criminally committed justify a period of temporary detention for examination. Do these differences justify commitment without notice and hearing?

In *Baxstrom, supra,* the United States Supreme Court stated:

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. * * * *Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill at all.* For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments.

* * *

"It may or may not be that Baxstrom is presently mentally ill and such a danger to others that the strict security of a Department of Correction hospital is warranted. All others receive a judicial hearing on this issue. Equal protection demands that Baxstrom receive the same." 383 US 107, 111–112, 114–115. (Citation omitted.) (Emphasis added.)

See also *Jackson v Indiana, supra,* applying the Baxstrom principles to a defendant found not competent to stand trial.

The principles of *Baxstrom* were applied in *Bolton v Harris, supra,* a case more factually analogous to the instant case involving commitment following a verdict of not guilty by reason of

insanity. Finding the commitment statute violative of equal protection, the Court reasoned that prior criminal conduct could not be a sufficient reason for denying a hearing on the question of present mental condition. The Court stated:

"[T]he commission of criminal acts does not give rise to a presumption of dangerousness which, standing alone, justifies substantial difference in commitment procedures and confinement conditions for the mentally ill.

* * *

"We think the principles of *Baxstrom* also apply where, as here, the defendant is acquitted upon his own plea of insanity.

* * *

"[P]rior criminal conduct cannot be deemed a sufficient justification for substantial differences in the procedures and requirements for commitment, and habeas corpus may no longer be deemed to afford adequate protection against unwarranted detention." 130 US App DC 1, 6, 8; 395 F2d 642, 647, 649.[6]

Equal protection demands that differences in treatment of classes be based on a rational basis. The lack of a hearing cannot be justified by the contention that the defendant because of his acquittal by reason of insanity is so potentially dangerous at that time that he must be committed without further hearing. *Baxstrom* held that past

---

[6] *See People v Lally,* 19 NY2d 27; 224 NE2d 87, 92 (1966) where it was held that in order "[t]o provide defendant with protection equal to that of other persons under the New York State statutes as to adjudications of mental incompetency" defendant is entitled to the same procedures for commitment to the special hospital for the dangerously insane that apply to all others civilly committed.

It should also be noted that *Bolton* did not require identical procedures for civilly and criminally committed individuals, but rather "procedures substantially similar" with different treatment accepted "to the extent that there are relevant differences between these two groups." 130 US App DC 1, 10; 395 F2d 642, 651.

criminal actions could not serve as a rationale basis of classification for purposes of determining commitment procedure. Those committed civilly in the State of Michigan receive a determination of mental illness which attains far more certainty than any inference of insanity. Where the state has provided a full range of judicial protection to determine the competency of all civilly committed, it may not deny those rights to a person found not guilty by reason of insanity.

Thus, based on equal protection of the laws, we hold that defendant is entitled to a sanity hearing when found not guilty by reason of insanity after completion of observation and examination.

## C. Interpretation of the Automatic Commitment Statute

We have held that unless those found not guilty by reason of insanity are given sanity hearings to ascertain their present mental condition, then their due process and equal protection rights have been violated. It was also the ruling of the trial court that the statute was defective on both grounds unless construed to provide for such a hearing. Is MCLA 767.27b unconstitutional in that it does not specifically provide for such a hearing?

Returning to the language of the statute, any person found not guilty by reason of insanity must "be committed immediately". The construction placed on this language by the trial judge that there is no provision for a hearing is a reasonable one. However, it is the duty of the Court to give the presumption of constitutionality to a statute and construe it as constitutional unless the contrary clearly appears. See *Cady v Detroit,* 289

Mich 499, 505; 286 NW 805 (1939); *Sullivan v Michigan State Board of Dentistry*, 268 Mich 427, 429–430; 256 NW 471 (1934).

Due process and equal protection require a hearing. We find nothing in MCLA 767.27b which precludes a hearing and since *Baxstrom* and *Specht* require one, we deem it necessarily implicit in our statute.

While due process requires that defendant be given a sanity hearing to determine present mental condition and equal protection requires that the hearing be substantially similar to other commitment proceedings, we believe that neither due process nor equal protection prohibit those acquitted by reason of insanity from being temporarily detained for a reasonable period for examination. As noted in both *Baxstrom* and *Bolton* exact equality of procedures is not necessary, but rather as stated in *Bolton* the procedures need only be substantially similar with different treatment permissible to the extent that there are relevant differences between these two groups. Therefore we hold that after examination and observation within the initial 60-day period of temporary detention the defendant is entitled to a full hearing identical with the usual civil commitment hearing provided by MCLA 330.21; MSA 14.811.[7]

---

[7] *See* Morris, *Mental Illness and Criminal Commitment in Michigan*, 5 J L Reform 2 (1971) for similar conclusions on the commitment procedure inadequacy of MCLA 767.27b.

We are cognizant of the recent decision by the Federal district court for the Eastern District of Michigan in *Bell v Wayne County General Hospital*, 384 F Supp 1085 (1974) which held the Michigan civil commitment scheme unconstitutional. The Federal court did not enjoin the operation of the civil commitment statute preferring to await the enactment of amendatory legislation. In any event, we hold that the civil commitment procedures must be made available to those found not guilty by reason of insanity including any amendments made to assure constitutional due process.

## VI —RELEASE PROCEDURES UNDER MCLA 767.27b (ISSUE 4)

If the result of the sanity hearing is such that defendant is not found insane, naturally he is released. However, if defendant is rightfully committed after such a hearing, the question becomes whether the release provisions available to him under MCLA 767.27b; MSA 28.966(12) are constitutionally adequate. The statute provides in part:

"Any person, who * * * is acquitted * * * by reason of insanity, shall be committed immediately * * * , until discharged in accordance with Act No. 151 of the Public Acts of 1923, as amended. The person shall not be released on convalescent care or final discharge without first being evaluated and recommended for release by the center for forensic psychiatry."

As regards release provisions, Judge Gilmore held that, "[t]he procedures for release of a person committed under MCLA 767.27b must be the same as those committed through normal civil commitment procedures."

### A. Equal Protection

While *Baxstrom* held that the state cannot withhold from a few the procedural protections or the substantive requirements for *commitment* that are available to all others, it did not concern itself with *release* provisions.

In *Jackson v Indiana, supra,* defendant was committed to a mental institution due to his incompetency to stand trial until he be deemed sane. There was no statutory provision for periodic review of the defendant's condition by either the court or mental health authorities. Thus, as there was no evidence that Jackson would ever be sane

enough to stand trial, his commitment was permanent in practical effect. The United States Supreme Court found critical disparities in release provisions in two civil commitment statutes, under any of which Jackson could possibly have been committed. They stated:

"More important, an individual committed as feebleminded is eligible for release when his condition 'justifies it,' § 22-1814, and an individual civilly committed as mentally ill when the 'superintendent or administrator shall discharge such person *or* [when] cured of such illness.' § 22-1223 (emphasis supplied). Thus, in either case release is appropriate when the individual no longer requires the custodial care or treatment or detention which occasioned the commitment, or when the department of mental health believes release would be in his best interests. The evidence available concerning Jackson's past employment and home care strongly suggests that under these standards he might be eligible for release at almost any time, even if he did not improve. On the other hand, by the terms of his present § 9-1706a commitment, he will not be entitled to release at all absent an unlikely substantial change for the better in his condition.

* * *

"As we noted above, we cannot conclude that pending criminal charges provide a greater justification for different treatment than conviction and sentence. Consequently, we hold that by subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release afforded by § 22-1209 or § 22-1907, Indiana deprived petitioner of equal protection of the laws under the Fourteenth Amendment." (Footnotes omitted.) 406 US 715, 728–730.

See also *Bolton, supra,* where the Court while

upholding the release provisions in the mandatory
commitment statute read into these provisions the
civil release provisions, particularly the require-
ment of periodic examination of the person and a
right to a court hearing.

Do the release provisions of MCLA 767.27b deny
equal protection of the laws?

### B. Discharge in Accordance with 1923 PA 151 under MCLA 767.27b

*Jackson, Baxstrom* and *Bolton* when read to-
gether require that substantially similar release
procedures be provided to those acquitted by rea-
son of insanity as provided to those civilly commit-
ted.

Under the automatic commitment statute, a
committed person may be released in accordance
with 1923 PA 151 if he has first been evaluated
and recommended for release by the Center for
Forensic Psychiatry.

The reference to 1923 PA 151 as amended con-
cerns discharge from civil commitment and is
presently embodied in MCLA 330.11, *et seq.;* par-
ticularly MCLA 330.35; MSA 14.825.[8]

---

[8] MCLA 330.35; MSA 14.825 provides:

"The medical superintendent shall discharge any patient in the
following cases:

"(1) A patient who has been on convalescent status for such period
of time as the medical superintendent shall specify. Any patient
aggrieved by the term specified for convalescent status may appeal
the decision of the medical superintendent to the probate court of the
county of residence.

"(2) Any patient whose temporary order shall have expired and for
whom no permanent order has been issued.

"(3) Any patient who has been legally transferred to another state
or legally deported to another country.

"(4) A patient cared for by an institution as mentally ill, feeble-
minded or epileptic and who in the opinion of the medical superin-
tendent is not mentally ill, feeble-minded nor epileptic.

"(5) Any patient who shall have been adjudged sound of mind and

It is clear that by expressly referring to the provisions for release from civil commitment in the automatic commitment statute the Legislature intended to provide these release remedies to those criminally committed.

However, in MCLA 330.35; MSA 14.825 the Legislature has also stated that "[t]he foregoing provisions [for release from civil commitment] do not apply to patients in the Ionia state hospital who have been committed by a court of criminal jurisdiction".

As there is a conflict in the statutes, it would normally be the function of this Court to construe and resolve the inconsistent language guided by

recovered from mental illness or otherwise ordered released by a court of competent jurisdiction. The court must in all cases of patients on convalescent status from an institution notify the medical superintendent and grant him an opportunity for a hearing before adjudging such patient recovered from mental illness. If as the result of such a hearing the patient is adjudged recovered from mental illness, the court shall notify the medical superintendent of the institution from which the patient is on convalescent status. The foregoing provisions do not apply to patients in the Ionia state hospital who have been committed by a court of criminal jurisdiction.

"When the medical superintendent is unwilling to discharge an unrecovered patient upon request, and so certifies in writing, giving his reasons therefor, the probate court of the county from which the patient was admitted into the institution may, upon certificate, and an opportunity for hearing thereon being accorded the medical superintendent, and upon such other proofs as may be produced, direct, by order, to the medical superintendent, the discharge of such patient, upon such security to the people of the state as the court may require for the good behavior and maintenance of the patient. A certified copy of the order shall be delivered to the medical superintendent of the institution from which the patient is discharged. The medical superintendent of the Ionia state hospital shall notify the sheriff of the county of the patient's last known residence, and the chief of police of the city of such residence if the patient resided in a city, when a patient is discharged from such hospital."

Other pertinent release provisions are MCLA 330.35a; MSA 14.825(1) allowing for discharge by the superintendent when discharge in his judgment is not "detrimental to the public nor the patient because of mental disease"; MCLA 330.39; MSA 14.829 regarding a patient's right to petition the court for a determination that he is again of "sound mind"; and MCLA 330.68; MSA 14.856 regarding the release of criminal patients transferred to Ionia.

legislative intent. In the instant case, however, we hold that the quoted language from MCLA 330.35 offends equal protection of the laws as it would prohibit those criminally committed from using the civil release provisions without a rational basis for the difference in release provisions. The fact that habeas corpus still exists as a possible method of release does not in itself mean that the release procedures are constitutionally adequate.

In Thomas Cooley's "Constitutional Limitations" it is stated:

"It will sometimes be found that an act of the legislature is opposed in some of its provisions to the constitution, while others, standing by themselves, would be unobjectionable. * * * A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void, because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed wholly indepen-

dent of that which was rejected, it must be sustained." (Footnotes omitted.) pp 177, 178.

See also *Traverse City School Dist v Attorney General,* 384 Mich 390, 415; 185 NW2d 9 (1971).

The release provisions are separate and distinct from the sentence which precludes their application to those committed by a court of criminal jurisdiction. The striking of the constitutionally repugnant sentence leaves the remainder of the statute completely independent and capable of execution.

In *Bolton, supra,* the Court upheld the mandatory commitment statute release provisions which provided for release of the patient upon the hospital superintendent's discretionary decision; however, civil commitment procedural safeguards requiring periodic examination of the patient and a right to a court hearing if one of the examining physicians believed the patient should no longer be hospitalized were read into the statute under the equal protection doctrine.

We believe that *Jackson* and *Bolton* require a similar result here. The provisions for civil release must be available to those committed by a court of criminal jurisdiction.[9]

----

[9] A last question related to the problem of release under MCLA 767.27b from commitment is whether a criminally committed defendant's equal protection rights are violated by requiring that he be "evaluated and recommended for release by the center for forensic psychiatry" prior to final discharge when a civilly committed person need not be scrutinized by the forensic center prior to final discharge.

But, as this question is not before us, we need not pass upon it. *See* Morris, *Mental Illness & Criminal Commitment in Michigan,* 5 J L Reform 2, 38, 39 (1971) who calls for "equating mental patients acquitted of crime by reason of insanity with other civil mental patients in *all* respects—including treatment, release, and discharge * * * ." *See also Releasing Criminal Defendants Acquitted & Committed Because of Insanity: The Need for Balanced Administration,* 68 Yale L J 293 (1958); *The Confinement & Release of Persons Acquitted by Reason of Insanity,* 4 Harv J Legis 55 (1966).

We therefore strike the constitutionally objectionable provisions set out below:

"The foregoing provisions do not apply to patients in the Ionia state hospital who have been committed by a court of criminal jurisdiction." MCLA 330.35(5); MSA 14.825(5).

## VII —COMMITMENT HEARING BY TRIAL JUDGE (ISSUE 5)

In Part V we held that equal protection required that the defendant was entitled to the same commitment procedures as those civilly committed except for the period of temporary detention for observation and examination. Once the examination and observation was completed, the defendant was entitled to the same hearing normally given to potential civil committees.

The prosecution argues that the circuit judge had no jurisdiction to conduct a civil commitment hearing. We can find no statutory authorization for a circuit judge to conduct a civil commitment hearing.[10] The only civil process for commitment provided by statute is a probate court civil commitment hearing. As to these matters, the probate court's jurisdiction is original and exclusive. See

[10] We acknowledge the fact that under MCLA 767.27a; MSA 28.966(11) the circuit judge may commit a criminal defendant who is believed to be incompetent to stand trial for a 60-day examination period. The circuit court is also authorized to consider the diagnostic reports and recommendations and may order the defendant committed to the Department of Mental Health for an 18-month period if it finds the person incompetent to stand trial. If during or after this 18-month period, the Department of Mental Health believes that defendant cannot recover competence to stand trial, the matter is then taken over by the *probate court* to conduct a civil commitment hearing. Even this statute does not give the circuit judge authority to conduct a civil commitment hearing under the procedures of MCLA 330.21.

As to the constitutionality of commitment statutes for incompetency to stand trial see *Jackson v Indiana, supra.*

MCLA 330.21; MSA 14.811; MCLA 330.35; MSA 14.825; MCLA 330.39; MSA 14.829 and MCLA 330.68; MSA 14.856.

While the trial judge scrupulously was careful to insure that the defendant had every right of due process, nonetheless, since the circuit court has no jurisdiction under the circumstances to commit to a mental institution, the commitment trial by Judge Gilmore was without authority of law.

The proper action by the trial judge in the instant case would have been to remand the action to the probate court for a sanity hearing per the procedures followed for civil commitment.[11] If defendant was not satisfied with the action of the probate court, he could then appeal back to circuit court pursuant to MCLA 330.53; MSA 14.843.

The prosecution asks this Court to set aside the orders of the trial court and to cancel defendant's bond.

While the commitment hearing of the trial judge was invalid, we do not believe the relief requested by the prosecution is appropriate. There was no contention that at the hearing conducted by Judge Gilmore the prosecution was not given an adequate opportunity to present its position or that the conclusion of the judge as to defendant's sanity was incorrect.

Technically, the status of this case is that the defendant after being found not guilty by reason of insanity has been unconstitutionally committed and thereafter invalidly found ineligible for commitment. The defendant is therefore all things being equal eligible for discharge. The proper parties, however, may at any time upon a proper showing move to commit the defendant. While we

[11] See the required procedures in *Bell v Wayne County General Hospital,* 384 F Supp 1085 (ED Mich, 1974).

perceive no special reason why the prosecutor should do so, in remanding this matter to the trial court, we will withhold cancelling the bond for 20 days within which time the prosecutor or any other proper party may, if it is thought appropriate, take commitment action in the probate court. If proceedings are not begun within this period, or if the prosecutor indicates he will not initiate such action, then the bond will be discharged and the orders of the trial court will be affirmed.

If the prosecutor undertakes to bring commitment action, such action shall in addition to the statutory procedures contain the following:

(1) notice to the potential committee by serving him the petition or a copy thereof sufficiently in advance of the hearing;[12]

(2) advising the potential committee at the outset of the proceedings that he has the right to legal counsel and, if indigent, to appointed counsel, to assist him at the proceedings;

(3) presence of the potential committee at the hearing unless his conduct is so disruptive that the proceeding cannot continue in any reasonable manner and only after some alternative to total exclusion is first attempted;

(4) notification to the potential committee of his right to demand a jury.


VII —CONCLUSION


We hold that neither due process nor equal protection prohibit a period of temporary statutory detention for examination and observation of one found not guilty by reason of insanity. However,

---

[12] Such procedure would comply with due process specified in *Bell v Wayne County General Hospital,* 384 F Supp 1085 (ED Mich, 1974).

upon completion of the examination and observation, due process and equal protection require that a defendant found not guilty by reason of insanity must have the benefit of commitment and release provisions equal to those available to those civilly committed.

The ruling as to such automatic commitment procedures is to have prospective effect only. Except that any already similarly detained for more than 60 days without examination and observation shall be given examination and observation within the 60 days from the date of this opinion and thereupon noticed for hearing within the next 10 days or discharged. The ruling as to release procedures applies immediately to all those automatically committed under MCLA 767.27b.

As to the instant case, the prosecution has 20 days from the issuance of this opinion to commence commitment proceedings in probate court if it so desires. If the action is not commenced within this period or if the prosecutor indicates he will not take such action, the bond will be discharged and the orders of the trial court shall be affirmed.

T. M. KAVANAGH, C. J., and SWAINSON and M. S. COLEMAN, JJ., concurred with WILLIAMS, J.

LEVIN, J. *(dissenting)*. Absent a showing that judicial intervention is necessary to prevent immediate and irreparable harm to the complainant, a sentencing court may not properly issue a directive concerning procedures to be followed by a state agency located in another county, physical custody of the complainant having been lawfully transferred to the state agency by the sentencing court, the state agency not being a party to the proceeding.

## I

McQuillan contends that his acquittal by reason
of insanity effectively removed him from the stric-
tures of the criminal justice system and that as a
free man he may only be committed to the Depart-
ment of Mental Health upon compliance with the
procedures applicable in civil commitments. He
contends that when, without a hearing, he was
"automatically" committed to the Department of
Mental Health, following his acquittal by reason of
insanity, he was unlawfully deprived of his liberty
because

(1) he could not constitutionally be detained and
transferred to the Department of Mental Health
without a prior hearing and determination of pres-
ent insanity;

(2) the statutory procedures for determining his
post-commitment sanity and securing his release
from custody are constitutionally inadequate.

The Court rejects McQuillan's principal argu-
ment, holding that a person acquitted of a crimi-
nal charge on the ground of insanity may be
automatically detained for a reasonable period of
time—60 days—without a hearing on the issue of
his sanity.[1]

The Court accepts the essence of McQuillan's
second argument holding that his detention and
transfer ("commitment") to the Department of
Mental Health was tainted by the constitutional
inadequacy of the statutorily prescribed proce-
dures for determining post-commitment sanity.
The Court then promulgates in constitutional
terms requirements for an initial hearing (within
60 days of "temporary detention") and for subse-

---

[1] The Court does indeed affirm the trial court's vacation of the
initial order in this case. However, it also affirms the trial court's
simultaneous commitment of McQuillan to "temporary custody".

quent hearings to redetermine sanity if the initial one results in "permanent" commitment.

Consideration of this case should have ended once it was decided that the sentencing court properly transferred physical custody of McQuillan to the Department of Mental Health.

## II

The jurisdiction of the sentencing court was invoked on the theory that its order "committing" or "temporarily detaining" McQuillan was invalid because of deficiencies in the procedures for determining post-conviction sanity. The jurisdiction of the sentencing court to hear this case is sustained by analogizing the relief sought here to the relief sought when a convicted person files a delayed motion for a new trial.

Had this Court concluded that McQuillan should have been immediately released upon acquittal and, therefore, the order detaining him was altogether void, there might be force to the analogy. But this Court does not hold that McQuillan was entitled to be immediately discharged upon acquittal by reason of insanity. This Court holds, rather, that the original order detaining McQuillan was valid to the extent it provided the authorities an opportunity "to examine and determine [his] present mental condition". Approval of a 60-day period of "automatic temporary detention" means that McQuillan's right to a sanity hearing did not mature until this period was completed and, thus, until long after he had been transferred from Wayne to Ionia authorities.

The Court's analysis would permit a prisoner incarcerated at Jackson or Marquette to file a motion for "relief from judgment" in whichever of

Michigan's 83 counties he was convicted on the theory that the sentencing court was without authority to sentence him to serve a term of imprisonment, and the sentence was therefore invalid, because rules or practices of the correctional authorities deny him constitutional rights.

A sentencing judge confronted with a showing that conditions at a state institution located in another county represent an immediate threat of irreparable harm to a convicted person might be constrained to enter a protective order. Such action would be appropriate only if the court in the other county could not be relied on to act expeditiously.

There is no suggestion that the Ionia Circuit Court could not or would not act expeditiously. McQuillan waited two years before filing his pleading entitled "Delayed Motion to Vacate Commitment Order" in the Wayne Circuit Court. No reason is advanced why McQuillan failed to seek relief in the Ionia Circuit Court.

### III

The question whether McQuillan was entitled to a sanity hearing within 60 days after acquittal was moot 22 months before he filed his delayed motion to vacate commitment order. McQuillan cannot avail himself of the procedures spelled out by the majority. I would not address these issues until they are presented in an adversary context by a person aggrieved, at the time he files his pleadings, by the asserted procedural deficiencies.

Whatever constitutional deficiencies there may be in the statutory commitment and release procedures, McQuillan is entitled to no relief until he seeks and is denied a sanity hearing. At no time

did he seek such a hearing in the Ionia Circuit Court before instituting this proceeding in the Wayne Circuit Court. If the Wayne Circuit Court had simply transferred venue to the Ionia Circuit Court for the purpose of determining the legality of McQuillan's continued detention, I would join in affirmance.

## IV

Besides the Wayne Circuit Court's lack of authority to decide and McQuillan's lack of standing to litigate the post-commitment issues decided, the Legislature has obviated all need to address them.

The new Mental Health Code provides persons acquitted by reason of insanity the declaratory relief granted by the majority.[2]

The Court unnecessarily extends constitutional doctrine to reach the very results embodied in an Act of the Legislature.[3] As Mr. Justice Harlan stated in dissent:

---

[2] 1974 PA 258, approved August 6, 1974.

[3] Even though the civil commitment statute requires a precommitment hearing on the issue of present sanity, the majority hold that "there exists significant relevant differences between those civilly and criminally committed" (similarly, see Bolton v Harris, 130 US App DC 1; 395 F2d 642 [1968]), justifying "automatic temporary detention" without a hearing on present sanity of a person acquitted by reason of insanity. Yet the Court holds that a legislature may not permissibly differentiate between commitment and release procedures for persons whose illness is in no way related to criminal activity and the procedures to be followed for persons whose illness a trier of fact has found causally related with the commission of a crime.

Automatic temporary detention is upheld by the Court only after "a judicious weighing of the public's right to be protected from possibly mentally ill persons against the individual defendant's right to be protected against unjustified commitment". Yet, without even presentation of the competing policy considerations, the Court, on constitutional grounds, insists that all other procedures affecting persons civilly and criminally committed must be "equal".

Nor is the Court content to limit its insistence on equality to those procedures presently existing. In anticipation of legislative revision of the civil commitment scheme in response to Bell v Wayne County

"The political process now having taken hold again in this very field, I am at a loss to understand why the Court should have deemed it appropriate or, in the circumstances of this case, necessary to proceed with such precipitate and insecure strides." *Jones v Alfred H Mayer Co,* 392 US 409; 88 S Ct 2186; 20 L Ed 2d 1189, 1213, 1229 (1968).

We would reverse the trial court and grant appellant's motion that venue be transferred to the Ionia Circuit Court.

T. G. KAVANAGH and J. W. FITZGERALD, JJ., concurred with LEVIN, J.

---

*General Hospital,* 384 F Supp 1085 (ED Mich, 1974), the Court holds that equal protection requires that these as of yet unknown amendments to the civil commitment procedures be necessarily made available to those found not guilty by reason of insanity.

Requiring the Legislature to treat the civilly committed and those committed following acquittal by reason of insanity identically may impede legislative reform of civil commitment procedures.