PEOPLE v AUSTIN

(CITY OF DETROIT v AUSTIN)

OPINION OF THE COURT

1. APPEAL AND ERROR—CRIMINAL LAW—OBSCENITY—LOST OR MIS-
PLACED EVIDENCE—AVAILABILITY FOR REVIEW—CONVICTION VA-
CATED—ORDINANCES.

A conviction of promoting pornography in violation of a city
ordinance must be vacated where evidence in the case, exhibits
which included two magazines allegedly sold from an adult
book store to the arresting officer, have been lost or misplaced
at some point in the lower court proceedings through no fault
of the defendant and are unavailable for review (Detroit Ordi-
nance, § 39-1-18.1).

2. OBSCENITY—STATUTES—LIMITED REGULATION—PROHIBITED MATE-
RIAL—DEFINITION.

Regulation of obscene materials must be carefully limited and the
permissible scope of such regulation is confined to works which
depict or describe sexual conduct; prohibited material must be
specifically defined in writing or authoritatively construed.

3. OBSCENITY—STATUTES—ORDINANCES—SEXUAL CONDUCT—DEFINI-
TION—SEX-RELATED MATERIAL—SCOPE OF PROHIBITION.

The requirement that sexual conduct be specifically defined in a
statute or ordinance on promoting pornography is designed to
provide clear and conspicuous notice of the scope of the prohibi-
tion to the sellers of sex-related material, and an ordinance is
not vague or in contradiction of a standard which requires that
prohibited material be specifically defined where the ordinance
defines sexual conduct at length and in great detail.

REFERENCES FOR POINTS IN HEADNOTES
[1, 7] 52 Am Jur 2d, Lost and Destroyed Instruments § 60.
[2] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity §§ 3, 33.
[3–5, 8–11] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 5.
[6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 374.

4. OBSCENITY—JURY—OBSCENE MATERIALS—JURY DISCRETION—SEX-
   UAL CONDUCT—FIRST AMENDMENT PROTECTION.

   A jury does not have unrestricted discretion to find any given
   material obscene in a prosecution for promoting pornography;
   material which is not a hard-core depiction of sexual conduct
   retains its First Amendment protection (US Const, Am 1).

5. OBSCENITY—ORDINANCES—FACIAL EXPRESSIONS—MOVEMENTS—UT-
   TERANCES—ORDINANCE OVERBREADTH—HARD-CORE PRONOGRA-
   PHY—SUPREME COURT LIMITATIONS.

   An ordinance which prohibits the promotion of pornography is
   overbroad and invalid where it defines sexual excitement as
   meaning the facial expressions, movements, utterances or other
   responses of a human male or female whether clothed or not,
   because such reactions do not fit within the limitation of hard-
   core pornography set by the United States Supreme Court
   (Detroit Ordinance § 39-1-18[15]).

6. MUNICIPAL CORPORATIONS—ORDINANCES—CONFLICTS—INTENTIONS
   OF DRAFTERS.

   A section of an ordinance which makes certain conduct unlawful
   but which is unclear and fails to reveal the intentions of its
   drafters must be construed in favor of a defendant charged
   with violating that section of the ordinance.

CONCURRENCE IN RESULT BY D. E. HOLBROOK, P. J.

7. APPEAL AND ERROR—CRIMINAL LAW—OBSCENITY—LOSS OF EVI-
   DENCE—CONVICTION VACATED.

   *A defendant's conviction of promoting pornography must be
   vacated where the loss of trial exhibits renders review impossi-
   ble.*

8. OBSCENITY—ORDINANCES—SUBSTANTIVE ISSUES—OBSCENE MATE-
   RIAL—DISTRIBUTION—CRIMINAL PROSECUTIONS.

   *Substantive issues concerning a new obscenity ordinance should
   not be resolved until necessary.*

9. OBSCENITY—ORDINANCES—OBSCENE MATERIALS—CONSTITUTIONAL
   LAW—VALIDITY OF ORDINANCES—CONSTITUTIONAL INFIRMITY.

   *Impermissible criminal prosecutions for the distribution of consti-
   tutionally protected materials may be the result of an early
   and unnecessary pronouncement of constitutional validity of an
   obscenity ordinance; the type of material that actually serves
   as a basis for prosecutions under an obscenity ordinance deter-*

*mines the validity of the ordinance regardless of the language used.*

10. OBSCENITY—STATUTES—OBSCENE MATERIALS—REGULATION—CONSTITUTIONAL LAW—FIRST AMENDMENT LIMITATIONS.

*Statutes which are designed to regulate obscene material must be carefully limited because of the possibility of First Amendment infringement (US Const, Am 1).*

11. OBSCENITY—OBSCENE MATERIALS—CONSTITUTIONAL LAW—FIRST AMENDMENT PROTECTION.

*Material that is truly obscene is not protected by the First Amendment (US Const, Am 1).*

Appeal from Wayne, George E. Bowles, J. Submitted March 2, 1977, at Detroit. (Docket No. 25433.) Decided July 6, 1977.

Joseph V. Austin was convicted in Recorder's Court of Detroit, Traffic and Ordinance Division, of promoting pornography in violation of an ordinance of the City of Detroit. Defendant appealed to the circuit court. Affirmed. Defendant appeals by leave granted. Reversed.

*Kermit G. Bailer,* Corporation Counsel, *Maureen P. Reilly,* Assistant Corporation Counsel, and *Marion Moore,* Special Assistant Corporation Counsel, for plaintiff City of Detroit.

University of Detroit Urban Law Clinic (by *Gilbert A. Donohue,* Supervising Attorney), for defendant.

Before: D. E. HOLBROOK, P.J., and BASHARA and W. F. HOOD,* JJ.

BASHARA, J. Defendant Joseph Varick Austin was convicted of promoting pornography, in violation of § 39-1-18.1 of the Municipal Code of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

City of Detroit. The conviction was affirmed in the Wayne County Circuit Court. This Court granted the defendant leave to appeal.

Defendant was a clerk working at the Adult News Bookstore in the City of Detroit. On March 6, 1974, Detroit Police Officer Donald Smith, working in plain clothes, purchased two magazines from the defendant. After reviewing the contents of the magazines, Officer Smith returned to the store and issued an ordinance violation ticket to defendant.

Initially, we must note that the exhibits in the present case, including the magazines in question, have been misplaced at some point in the lower court proceedings and are unavailable for review.[1] Since the loss of this evidence can in no way be attributed to the defendant, this Court is powerless to do anything but vacate his conviction. Although this holding would in most cases end our discussion of the matter, we recognize the importance of several of the issues raised and extensively briefed by the parties. As the matter is properly before us, and it is likely that prosecutions under the ordinance as presently drafted will continue, we will speak to the critical issues as to the validity and interpretation of the enactment.

Defendant first questions the constitutional validity of the ordinance. Before discussing these questions it is necessary to set forth the relevant language of the ordinance.

The act was passed by the Common Council for the City of Detroit, effective January 3, 1974, presumably in response to the decision of the United States Supreme Court in *Miller v Califor-*

---

[1] On March 28, 1977, this Court ordered that a search be made for the missing exhibits by the Wayne County Clerk. A letter was subsequently filed by the clerk with this Court detailing the unsuccessful attempts made to locate the material.

*nia,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419
(1973). Section 39-1-18.1 states that it is unlawful
"for any person to promote pornography" if that
person knows "its content and character". Section
39-1-18(10) provides the definition for "pornogra-
phy", as used in the remainder of the ordinance:

" 'Pornography': Any material or performance is 'por-
nography' if all of the following elements are present:
(A) Considered as a whole, by the average person,
applying the contemporary community standards of the
City of Detroit, it appeals to the prurient interest; and
(B) It depicts, describes or represents in a patently
offensive way, sexual conduct, as hereinafter defined;
and (C) It lacks serious literary, artistic, political or
scientific value."

"Sexual conduct" is defined in § 39-1-18(14)–(16):

"(14) 'Sexual Conduct' means: (A) masturbation; (B)
sexual intercourse, whether genital-genital, oral-genital,
oral-anal, or anal-genital; (C) any erotic fondling or
touching of the covered or uncovered genitals, buttocks,
pubic area, or any part thereof, the breasts of the
female; whether the conduct described in (A) through
(C) is engaged in alone or between members of the same
or opposite sex, or between humans and animals or
humans and inanimate objects; or (D) actual or simu-
lated display or exhibition of the human pubic area or
genitals or any part thereof, or (E) sexual excitement,
as hereinafter defined; or (F) sado-masochistic abuse as
hereinafter defined.
"(15) 'Sexual Excitement' means the facial expressions,
movements, utterances or other responses of a human
male or female, whether alone or with others, whether
clothed or not, who is in an apparent state of sexual
stimulation or arousal, or experiencing the physical or
sensual reactions of humans engaging in or witnessing
sexual conduct.
"(16) 'Sado-Masochistic Abuse' means flagellation or
torture by or upon a person who is nude or clad in

undergarments or in a sexually revealing or bizarre costume, or the condition of such person being fettered, bound or otherwise physically restrained, in an apparent act of sexual stimulation or gratification."

In *Miller, supra,* the Supreme Court reaffirmed the holding of *Roth v United States,* 354 US 476; 77 S Ct 1304; 1 L Ed 2d 1498 (1957), that obscene materials are not protected by the First Amendment. 413 US at 20–21. After a lengthy discussion of the various attempts of the Court to fashion appropriate standards for the definition of such unprotected, "obscene" material, the *Miller* Court announced a new set of guidelines:

"State statutes designed to regulate obscene materials must be carefully limited. * * * As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, * * * (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (Citations and footnote omitted.) 413 US at 23–24.

In the present case defendant attacks the ordinance in question by alleging two distinct yet related violations of the *Miller* guidelines. He

argues that the language of the Detroit ordinance is vague, in contradiction to standard (b) which requires that the prohibited material be "specifically defined". Defendant also contends that the ordinance definition of "sexual conduct" is overbroad in that it reaches material not intended by the *Miller* Court to be beyond First Amendment protection.

Defendant's vagueness argument is not persuasive. The *Miller* requirement that sexual conduct be specifically defined in a statute or ordinance is designed to provide clear and conspicuous notice of the scope of the prohibition to the sellers of sex-related material.[2] The Detroit ordinance defines "sexual conduct" at length and in great detail. We find no violation of the "specifically defined" standard.[3]

Defendant's challenge to the ordinance on the basis of overbreadth has considerably more substance.[4] The *Miller* Court, while not wanting to draft legislation for the states, did set forth examples of what type of material could validly be prohibited:

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra:*

"(a) Patently offensive representations or descriptions

[2] *See People v Herron,* 68 Mich App 381; 242 NW2d 584 (1976), *Kalita v Detroit,* 57 Mich App 696; 226 NW2d 699 (1975).

[3] *See Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), fn 6. The Detroit ordinance is alleged by the prosecution to be modeled after the Oregon and Hawaii statutes approved by the Court as to their depiction of defined conduct.

[4] The defendant has standing to challenge the ordinance as overbroad on its face. *See Gooding v Wilson,* 405 US 518; 92 S Ct 1103; 31 L Ed 2d 408 (1972).

of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 US at 25.

A more recent Supreme Court case has clearly indicated that the examples of sexual conduct expressed in *Miller, supra,* were meant to be read as the outside limits of a legislative enactment against obscene material. In *Jenkins v Georgia,* 418 US 153; 94 S Ct 2750; 41 L Ed 2d 642 (1974), the Court reversed a state conviction of a movie house operator *for* showing the film "Carnal Knowledge". The *Jenkins* Court stated:

"Even though questions of appeal to the 'prurient interest' or of patent offensiveness are 'essentially questions of fact,' it would be a serious misreading of *Miller* to conclude that juries have unbridled discretion in determining what is 'patently offensive'.

* * *

"[W]e made it plain that under that holding 'no one will be subject to *prosecution* for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct * * * '." (Emphasis added.) 418 US at 160.

The Court went on to discuss the examples of "sexual conduct" set forth in *Miller:*

"While this did not purport to be an exhaustive catalog of what juries might find patently offensive, it was certainly intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a determination. It would be wholly at odds with this aspect of *Miller* to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff, *even*

*though a properly charged jury unanimously agreed on
a verdict of guilty."* (Emphasis added.) 418 US at 160–
161.

The Court concluded that the movie, while con-
taining scenes of nudity and sexual acts, "could
not, as a matter of constitutional law", be found to
be in violation of the *Miller* standards:

"Appellant's showing of the film 'Carnal Knowledge'
is simply not the 'public portrayal of hard core sexual
conduct for its own sake, and for the ensuing commer-
cial gain' which we said was punishable in *Miller.* Id.,
at 35, 37 L Ed 2d 419." 418 US at 161.

In consideration of the clarifying opinion of
*Jenkins,* we must view the instant ordinance to
see whether it would justify a *prosecution* for sale
of material that could not, as a matter of law, be
termed "hard core" pornography. It is not
sufficient, as argued by the plaintiff, that the
ordinance included the *Miller* standards, so that
any conviction would of necessity be required to
meet those tests. As pointed out in *Jenkins, supra,*
even a properly instructed jury does not have
unrestricted discretion to find any given material
in violation of the law.

Of greater importance is the fact that material
which is not a "hard core" depiction of sexual
conduct retains its First Amendment protection.
An evil even greater than an individual defend-
ant's fear of conviction is the inevitable, self-im-
posed suppression of protected speech arising from
a statute or ordinance which threatens prosecution
for the dissemination of such speech. While some
"gray area" at the edge of properly drafted legisla-
tion is unavoidable, statutes or parts of statutes
which prohibit material which cannot arguably

fall within the limitations imposed in *Miller, supra,* and *Jenkins, supra,* must be struck down.

This Court's examination of the Detroit ordinance convinces us that one of its definitional sections extends its sweep beyond that intended by *Miller* and *Jenkins.* This being the case, we may sever that section which would allow for prosecutions against the sale or distribution of protected material. *People v McQuillan,* 392 Mich 511; 221 NW2d 569 (1974), *People v Bandy,* 35 Mich App 53; 192 NW2d 115 (1971).

We hold that § 39-1-18(15) of the ordinance is facially overbroad and invalid. We cannot conceive how "facial expressions, movements, utterances or other responses", dealt with in subsection (15), can be fitted within the limitations of "hard core" pornography stated in *Miller* and *Jenkins.*

Arguably some conduct described in § 39-1-18(16) may fall outside such limits, but we deem this section to be valid as it was drawn verbatim from the Oregon statute[5] cited with approval in *Miller.*

The ordinance also provides for a number of affirmative defenses. Section 39-1-18.3 reads:

"It shall be an affirmative defense to a prosecution under Sections 39-1-18.1 or 39-1-18.2 if the pornographic material was disseminated by a person who was acting in his capacity as:

"1) A teacher of an accredited course of study related to pornography at a State approved educational institution; or

"2) A licensed medical practitioner or psychologist in the treatment of a patient; or

"3) A participant in the criminal justice system, such as a legislator, judge, prosecutor, law enforcement official or other similar or related position; or

---

[5] Oregon Laws 1971, c 743, Art 29, § 255-262.

"4) A supplier to any person described in (1) through (3) above."

The defendant argues that he has a defense to the current prosecution as a "supplier", under subsection (4), to a law enforcement official, namely the undercover police officer who purchased the magazines.[6] The prosecution responds that the defense only applies where the supplier both knows he is disseminating the material to one of the exempted parties and knows that the party is acting in an official capacity when receiving the material.

Viewing the ordinance on its face this Court is unsure as to the intent of the drafters. If the defendant is correct, the ordinance can never be enforced through sales to police officers. While the argument of the prosecution seems appealing, to accept it would mean reading into a criminal provision knowledge requirements not evident on the face of the legislation. Faced with this uncertainty, we would be required to construe the provision in the defendant's favor.

"It is a fundamental rule of construction of criminal statutes that they cannot be extended to cases not included within the clear and obvious import of their language. And if there is doubt as to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of the defendant. In other words, nothing is to be added by intendment." *People v Ellis,* 204 Mich 157, 161; 169 NW 930 (1918).

"Defendant ought not to be convicted unless he is clearly and unequivocally within the language of a statute which by its terms covers his case. The statute

---

[6] This issue was never raised at trial or in the earlier circuit court action. This Court, in granting leave to appeal, ordered the parties to brief and argue this issue. We do not consider the defense to have been waived in this case since the scope of the defense had not as yet been ruled upon by any court and, assuming the defense to be applicable, it would be an injustice to allow the prosecution to stand.

may not be extended beyond its plain terms by judicial construction, and defendant convicted, by showing acts which ought to have been within the terms of the statute but are not. There are no constructive criminal offenses." *People v Goulding,* 275 Mich 353, 359–360; 266 NW 378 (1936).

In view of the fact that the conviction must otherwise be vacated, we do not render any decision on this issue. We do advise the plaintiff, however, to reevaluate this section of the ordinance and make any changes necessary to correctly state the intentions of its drafters.

Defendant's conviction is reversed.

W. F. HOOD, J., concurred.

D. E. HOLBROOK, P. J. *(concurring).* This writer concurs in the result achieved herein. The loss of exhibits renders review of defendant's conviction impossible and, therefore, we must vacate his conviction. However, discussion of the substantive issues in the instant case should await resolution until such time as is necessary. This is particularly so herein where distribution of allegedly obscene material has served as a basis for criminal prosecution pursuant to a new obscenity statute, § 39-1-18.1 of the Municipal Code of the City of Detroit. Determination of invalidity of such a statute may well depend on the type of material that actually serves as a basis for prosecution under it regardless of the statutory language used. The statute may well appear valid, yet its actual use may well be constitutionally infirm. Pronouncement of constitutional validity, therefore, could result in prosecution in the future for distribution of constitutionally protected material. Such prosecutions might well be encouraged by an unnecessary

finding of constitutional validity. Statutes which are designed to regulate obscene material must be carefully limited because of the possibility of First Amendment infringement. *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973). However, material that is truly obscene is not protected by the First Amendment. *Miller, supra, Roth v United States,* 354 US 476; 77 S Ct 1304; 1 L Ed 2d 1498 (1957). This writer would decline to make any decision with regard to this statute until such time as it is necessary and can be considered on the basis of a full record. This writer must express disapproval with the majority's opinion which, although well written and thorough, unnecessarily considers the validity of this statute.

This writer concurs in result only.