Willie George REESE,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT,
Respondent-Appellee.

No. 78–2345.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1979.

Rehearing Denied Sept. 6, 1979.

Dianne Weaver, Ft. Lauderdale, Fla. (Court-appointed), Marilyn Pardo Liroff, for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Miami, Fla., James H. Greason, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent-appellee.

Before BROWN, Chief Judge, CLARK and VANCE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The appellant, Willie George Reese, a man plagued for many years with recurring symptoms of serious mental illness, appeals from the dismissal of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. Reese was convicted in a Florida state court of robbing a finance company, and sentenced to 101 years' imprisonment. His habeas petition challenges the sufficiency of the evidence that he was sane during the commission of the robbery, argues that his procedural due process right to a competency hearing at trial was violated, and alleges that he was actually incompetent during the course of the trial proceedings. We affirm the denial of habeas relief.

I.

Reese was charged with robbery by an information filed on July 1, 1971. Reese underwent examination by two psychiatrists later in July pursuant to the state trial court's order. Both psychiatrists diagnosed him as paranoid schizophrenic. On August 16, 1971, the state court declared Reese incompetent to stand trial and ordered him committed to South Florida State Hospital. The admission report at the South Florida State Hospital stated that Reese had previously spent 17 months in the State Hospital at Chattahoochee, where he was treated with Thorazine, a drug often used to treat schizophrenia. While at the South Florida Hospital Reese was again treated with Thorazine on gradually decreasing dosage.

In late December of 1971, Reese was diagnosed by a doctor at the State Hospital as an alcoholic paranoid in a state of remission, and it was recommended that he be returned to the court for trial. An evaluation conference was held at the hospital and Reese, though he appeared tense and anxious, was regarded as fit to return to court. In February of 1972, the court ordered Reese readmitted to the hospital to be observed while off medication. Another evaluation conference took place at the hospital in May of 1972, and the doctors there again agreed that Reese was fit for trial. Upon this second release to court, an independent psychiatric examination was ordered. A psychiatrist examined Reese in the county jail on June 21, 1972, and found him competent to stand trial.

A competency hearing was held before the state trial judge on August 28, 1972. Two psychiatrists testified at the hearing and Reese was adjudged competent. Most of the transcript of the competency hearing is irretrievably lost but it appears from the existing portion that some sort of outburst by Reese took place and that Reese's counsel apologized to the judge for his behavior. The record of the August hearing is sufficient to make it clear, however, that the same state judge that had carefully evaluated Reese's competency during the year prior to August of 1972 and had ordered Reese repeatedly examined during that period, adjudged Reese finally competent for trial.

One month after the competency hearing, on September 26, 1972, Reese's trial began. Reese's defense was that he was insane at the time of the crime. With one exception midway through the trial, Reese's defense counsel consistently maintained that Reese was mentally competent to stand trial, and he frequently admonished the jury not to infer Reese's sanity during commission of the crime from his present sanity during trial. During voir dire, Reese's counsel three times emphasized that "Willie Reese, as he sits here today, is sane." In his opening statement Reese's counsel recounted his history of psychiatric problems and concluded that, "Now, finally, you see him competent to stand trial." Again, in his closing argument, defense counsel emphasized that after long treatment Reese's symptoms had abated and he had been determined competent to stand trial, but that the jury should not allow the abatement of Reese's mental illness to color their judgment as to his sanity during the robbery.

The sole exception to this pattern of Reese's defense occurred during the examination of one of three psychiatrists called to testify by the defense. During the examination of Dr. Charles Mutter, who had been

testifying at length as to Reese's past medical history, defense counsel asked the doctor whether he thought Reese was presently competent to stand trial. The prosecution objected on the grounds that Reese's present competency had been determined and was no longer relevant, but the court allowed the witness to answer. Dr. Mutter stated, "I don't know. I haven't examined him today or at the most recent time." Dr. Mutter was then asked whether he could render an opinion as to Reese's present sanity based on Dr. Mutter's examination of Reese on July 19, 1972. The doctor answered, "No way. I don't think anyone can." A conference outside the presence of the jury then took place, and defense counsel stated that in the hallway outside the courtroom before the trial commenced Dr. Mutter opined that Reese was not competent to stand trial. During the entire trial defense counsel made no other effort, either before or after Dr. Mutter testified, to place in issue Reese's present competency.

The jury returned a verdict of guilty. Defense counsel then, for the first time since the August pretrial competency hearing, moved to have Reese examined for competency. The motion was denied and Reese was sentenced to 101 years' imprisonment. Two days later, on September 29, 1972, Reese's counsel filed a motion for a new trial. That motion did not raise the issue of Reese's competency during trial. The motion was denied on October 11, 1972, and Reese filed a notice of appeal on October 16.

During the month of October 1972, Reese was also undergoing prosecution for unrelated criminal charges before the same trial judge who had presided during Reese's robbery trial. As part of that prosecution the trial court ordered a psychiatric examination of Reese on October 3, and Reese underwent examination between October 11 and October 13 by three psychiatrists. The psychiatrists reported to the court that Reese was again experiencing psychiatric disorders, including hallucinations and severe paranoia. One of the examining psychiatrists, Dr. Sanford Jacobson, speculated that Reese might not have been competent

during his robbery trial two weeks before, but also noted that the fluctuations in Reese's mental condition made it difficult to determine his condition during any past period.

On October 24, 1972, the state court heard argument on a defense motion to vacate the judgment and sentence on Reese's robbery conviction on the grounds that he was incompetent during the trial. Initially, the court evidenced confusion as to the grounds for the motion, stating that the issue presented had already been decided by the jury. Defense counsel clarified the motion, however, explaining that it did not concern Reese's insanity defense, but rather the non-jury issue of competency for trial. In acknowledging the technical error, the court stated that it now understood the distinction, but that the result was the same since it had already found Reese competent. The court, which had received the October psychiatrists' reports stemming from Reese's second prosecution, refused to hear any testimony by psychiatrists concerning Reese's condition during his robbery trial. Rather, the judge—who had himself observed Reese during that trial—denied the motion to vacate the conviction and the sentence, because he had ruled before that Reese was competent during his trial. Consistent with the diagnosis of Reese's present state, the court did, however, order that Reese be sent to a state hospital, not to be released to the state penitentiary until the hospital determined that he was fit to begin serving his sentence.

## II.

Reese's defense at trial was insanity at the time of the offense. In his habeas petition Reese claims that Florida failed to meet is burden of establishing that he was legally sane during the robbery. The Supreme Court recently modified the standard to be applied in a federal habeas corpus proceeding when a petitioner claims that he was convicted in a state court upon insufficient evidence. In *Jackson v. Virginia*, —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560

(1979), the Court repudiated the "no evidence" rule of *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), in federal habeas corpus cases challenging the sufficiency of the evidence adduced at a state court trial. Under *Jackson*, the new test which must be applied by a federal judge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." —— U.S. at ——, 99 S.Ct. at 2789 (emphasis in original).

Reese presented the testimony of three psychiatrists in an effort to establish his insanity at the time of the robbery. The first, Dr. Mutter, conceded on questioning that he "could not get any adequate history to make this determination of his competency at the time of the offense." The second psychiatrist to testify, Dr. Jarret, gave the strongest testimony for Reese, stating that in his opinion it was "a reasonable medical probability" that Reese did not know right from wrong at the time of the robbery. The final expert to testify, Dr. Jaslow, stated that Reese was probably a paranoid schizophrenic during the period encompassing the robbery, but that the symptoms may have been in remission on the actual robbery date. He stated that Reese's symptoms were "sometimes active and sometimes relatively inactive under control of medications and his own improvement" and that it is difficult to determine retrospectively what Reese's condition was at the specific time of the offense. Dr. Jaslow was asked what he made of testimony that Reese had told one of the robbery victims to keep his eyes closed and not to look at him or he would kill him. He answered that "it would suggest that he was aware of what was going on [and] that there was present mental process at that time, ability to reason and ability to understand." Choosing to rely on the testimony of lay witnesses to the crime and its cross-examination of the defense psychiatrists, the prosecution did not offer expert psychiatric testimony of its own to rebut the evidence of insanity produced by Reese.

 Florida follows the *M'Naghten* Rule for determining insanity: to be legally insane the defendant must have been unable to understand the nature of his act or its consequences, or incapable of distinguishing right from wrong. *Anderson v. State*, 276 So.2d 17 (Fla.Sup.Ct.1973). Expert testimony is not binding on the jury and the jury must determine its weight and credibility. *Trolinger v. State*, 300 So.2d 310 (Fla. 2d Dist. 1974). The expert evidence brought forward by Reese was equivocal and conflicting. In viewing all the evidence at trial in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Reese was sane.

The appellant also challenges an evidentiary ruling by the trial court in which one of the robbery victims was allowed to testify that a female employee of the finance company that was robbed was raped during the course of the robbery. The trial court gave a cautionary instruction when the testimony was admitted.

 The admission of this evidence of contemporaneous activity was not error. Assuming, arguendo, it was improper, it certainly was not "so prejudicial as to constitute a denial of due process." This severe test must be satisfied before a federal habeas court may address a state evidentiary ruling. *Nordskog v. Wainwright*, 546 F.2d 69 (5th Cir. 1977). Under Florida law, evidence of crimes that are part of the res gestae is generally admissible to give a complete and intelligent account of the crime charged. *E. g., Kennedy v. State*, 140 Fla. 124, 191 So. 193, 196 (Fla.Sup.Ct.1939); *Feldman v. State*, 212 So.2d 21, 22 (Fla. 3d Dist. 1968). Thus, if error, the admission of this evidence was not of constitutional proportion. *See Dinkins v. Wainwright*, 451 F.2d 587, 588 (5th Cir. 1971).

### III.

 Due process requires that a defendant not be made to stand trial for a criminal charge unless he has a sufficient present ability to consult with his lawyer

with a reasonable degree of rational understanding, and possesses a rational and factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). To safeguard that due process guarantee, the Supreme Court announced in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), a separate procedural due process right to a competency hearing whenever the facts or events presented to the trial court raise a bona fide doubt as to the defendant's competency. *See Pedrero v. Wainwright,* 590 F.2d 1383, 1387 (5th Cir. 1979).

 When federal habeas relief is sought on grounds of incompetency-in-fact, the petitioner's initial burden is heavy. "Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir. 1973), subsequent opinion, 536 F.2d 1051 (5th Cir. 1976). Similarly, when habeas relief is sought on grounds of a violation of the *Pate* procedural right to a competency hearing, a petitioner shoulders the burden of proving that objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency. *Pedrero, supra,* at 1387. The emphasis in a *Pate* analysis is on what the trial court did in light of what it then knew. *Davis v. Alabama,* 545 F.2d 460, 464 (5th Cir. 1977).

 The relevant factors in assessing competency are a defendant's past medical history, the opinion of psychiatric experts and the defendant's behavior during trial. *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975). After examining the record in light of these factors, we agree with the district court (1) that Reese was not denied any of the procedural rights he had under *Pate,* and (2) that Reese has failed to meet his habeas burden of producing facts that positively, unequivocally and clearly generate a real, substantial

and legitimate doubt as to his actual competency during trial.

## A.

The state trial court was well aware of Reese's history of psychiatric disorder, and in the year prior to Reese's trial the court was highly solicitous of Reese's right to be tried only while competent. When Reese was brought to the court at the initiation of the criminal process against him, a psychiatric examination was ordered. After considering the results of that examination, the court ordered Reese to a hospital for treatment. During the months Reese spent in the South Florida Hospital, his condition steadily improved. In December of 1971 the doctor who had examined Reese at the beginning of his commitment diagnosed him as competent. That diagnosis was reviewed by a hospital examination board which independently interviewed and evaluated Reese, and was confirmed. The court nonetheless refused to try Reese upon his release, ordering that he be returned to the hospital again while free of medication. The two-tiered medical examination of Reese was then repeated, with an examining physician reporting on April 24 that Reese showed no signs of major psychiatric illness, and with a review board seconding that diagnosis on May 10. Even then, the court ordered an examination of Reese by a disinterested qualified psychiatrist before commencing trial. That psychiatrist reported on June 2 that Reese was competent to stand trial, stating that Reese "was clear and in contact with [the doctor] and understood and was able to respond."

 A competency hearing was then held on August 28. Although no complete transcript of that hearing exists and there is evidence of an outburst of some sort by Reese, it is undisputed that two psychiatrists testified and that Reese was adjudged competent. A presumption of regularity supports the competency hearing, and in the absence of clear evidence to the contrary we presume that the state judge discharged his responsibilities at that hearing judiciously and in good faith. *See Nash v.*

*Estelle*, 597 F.2d 513, 519 (5th Cir., 1979) (en banc); *United States v. Chemical Foundation*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). The objective evidence available strongly supports the validity of that presumption here. The unanimous medical opinion prior to the hearing was that Reese was competent, the history of the trial court's actions up to the hearing date was one of careful sensitivity to Reese's competency, two qualified professionals testified at the hearing, and Reese's defense counsel completely acquiesced to the finding of competency during the period between the hearing and the start of the trial. Up to the commencement of the trial, then, the state court did all that was required under *Pate* to safeguard Reese's due process rights.

Nothing that subsequently occurred during the course of trial was sufficient to evoke a bona fide doubt in the mind of the trial court that Reese was not truly competent. There is no evidence in the record of any unusual behavior by Reese. Immediately after the jury returned its verdict and the court pronounced sentence, Reese stated to the judge in open court: "Okay. Good. I knowed that before I came on here. You knowed it. Anyway, I don't plan to do any six months. I plan to die after six months." Whatever one thinks of the intelligence of his remarks, Reese communicated that he understood what was happening during the trial and what it meant.

■■■■ It is more significant that Reese's counsel never claimed during trial that Reese was incompetent. Counsel, in fact, argued to the jury throughout the trial that Reese was presently competent. We have previously found the failure of defendant or his counsel to raise the competency issue persuasive evidence that no *Pate* violation occurred. *Grissom v. Wainwright*, 494 F.2d 30, 32 (5th Cir. 1974); *Jackson v. Caldwell*, 461 F.2d 682, 693–94 (5th Cir. 1972), *cert. denied*, 409 U.S. 991, 93 S.Ct. 334, 34 L.Ed.2d 257 (1973). *Pate* does not require that a trial judge be an omniscient psychiatrist, but that he act reasonably on the objective facts put before him.

*See Drope v. Missouri, supra*, 420 U.S. at 180, 95 S.Ct. at 908; *Chenault v. Stynchcombe*, 546 F.2d 1191, 1193 (5th Cir. 1977). When prior to trial the consensus of medical opinion, stamped by the judicial imprimatur of a formal determination of competency, has once found a criminal defendant competent, it takes far more than a defendant's silence to raise a doubt that these previous professional judgments were wrong.

■■■■ The only event at trial that even tended to place Reese's competency in issue was the exchange between defense counsel and the court concerning Dr. Mutter's testimony. Out of the jury's presence, Reese's counsel claimed that Dr. Mutter had told him that he thought Reese was incompetent. Minutes before that claim was made, however, the trial court had heard Dr. Mutter's sworn testimony that he had not recently examined Reese and did not know whether or not Reese was competent. The defense counsel's naked suggestion of incompetence, which contradicted his own prior and subsequent statements concerning Reese's competence as well as Dr. Mutter's testimony, was certainly not enough to raise sufficient doubt about Reese's competency to require that the proceedings come to a mid-trial halt so that a new competency hearing could be held. *See Jordan v. Wainwright*, 457 F.2d 338, 339 (5th Cir. 1972). Similarly, the unsubstantiated and virtually pro forma motion to have Reese examined which was made immediately after return of the jury's verdict was not sufficient to trigger a *Pate* hearing. *See McCune v. Estelle*, 534 F.2d 611, 612 (5th Cir. 1976); *Jordan v. Wainwright, supra*, 457 F.2d at 339.

■■■■ In sum, considering the defendant's recent history of successful treatment, the favorable diagnoses made by the examining psychiatrists, the formal adjudication of competency made before trial, the position taken by defense counsel throughout the trial, and the demeanor of the defendant throughout the proceedings, the trial court's refusal to afford Reese a second competency hearing did not violate *Pate*.

B.

Two weeks after Reese's trial, he was examined by three psychiatrists in connection with a separate criminal charge against him. Two of the psychiatrists, Drs. Mutter and Jaslow, had already played significant roles in Reese's diagnosis and treatment. Dr. Mutter had been one of the examining psychiatrists who had first recommended Reese for treatment in September of 1971, and it was Dr. Jaslow who had been appointed by the court for a disinterested evaluation of Reese prior to his adjudication of competency in August of 1972. Both psychiatrists had testified extensively at Reese's trial. The third psychiatrist to examine Reese, who was also previously familiar with his condition, was Dr. Sanford Jacobson. All three experts concurred that as of October 11–13, 1972, Reese was actively psychotic and not fit for trial on the separate offense. In addition, Dr. Jacobson speculated that Reese may not have been competent during his recently completed robbery trial. Dr. Jacobson also, however, added a caveat to that opinion:

I have seen Mr. Reese when he would appear to be in substantial control of himself without a gross disorder of thinking, and I have seen him as he appears now. These conditions are somewhat in contrast to each other, and to determine what his condition was at some point in time during the interim, would be very difficult.

Unlike Dr. Jacobson, Drs. Mutter and Jaslow did not offer any opinion in their reports as to Reese's competency at his prior trial. The trial court, on October 24, denied Reese's motion to vacate the robbery conviction, but he did direct that Reese be sent to a state hospital for treatment before being sent to the penitentiary. As far as the record reveals, no further efforts were made to try Reese on the separate offense.

The appellant argues that it was error under *Pate* for the trial court to refuse to conduct an evidentiary hearing on Reese's competence at the October 24 proceeding. The dispositive response to that contention is that the procedural safeguards of *Pate* apply to pretrial and trial proceedings only; they have no applicability in cases such as this, where the evidence of possible incompetence does not arise until after the trial and sentencing are complete. A *Pate* violation is a procedural error by the trial court and it may occur only in the time frame encompassed by the trial itself and immediately related proceedings. *See Zapata v. Estelle*, 588 F.2d 1017, 1020 n. 2 (5th Cir. 1979). Information made known to the trial judge through an unrelated proceeding weeks later may not form the base for construction of a *Pate* procedural error. It is always open for the defendant to later assert his actual incompetence at trial in a subsequent collateral proceeding, but that substantive claim should not be confused with a defendant's procedural rights under *Pate* to a hearing whenever a bona fide doubt as to competence surfaces at trial. The Supreme Court in *Drope v. Missouri, supra*, made it abundantly clear that the concern of *Pate* was the creation of procedural rules designed to detect incompetence and insure a fair trial. 420 U.S. at 172–175, 95 S.Ct. at 904–905. The emphasis in *Pate* analysis is on the objective evidence presented to the trial court, not on evidence later developed. The issue is whether, "in light of what was then known, the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial." 420 U.S. at 174, 95 S.Ct. at 896. "[O]ne cannot fault a trial judge for failing to determine a question that he has no reason to believe is in issue." *Davis v. Alabama, supra*, 545 F.2d at 464. The post-trial events in Reese's case, therefore, must be examined not for the possibility that they triggered a procedural *Pate* violation, but for the light they shed on the claim that Reese was in fact not competent during his trial.

To sustain his present collateral claim that he was actually incompetent, Reese must bring forward facts that "positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt" as to his mental capacity to assist in his trial defense. *Bruce v. Estelle, supra*, 483 F.2d at 1043. The facts in Reese's case do not meet

that standard. All of the expert opinions gathered before, during and after Reese's trial indicated that Reese floated in and out of touch with reality, that his symptoms tended to respond favorably to medication and other treatment, and that it was always difficult to judge Reese's past condition during a specific period on the basis of the symptoms he was manifesting at the time of an examination. Dr. Jacobson's suggestion that the actively psychotic man he beheld in mid-October may also have been actively psychotic in late September was by his own admission a determination that was difficult and uncertain. Dr. Jacobson's tentative retrospective diagnosis must be weighed against the consensus of expert opinion prior to Reese's trial, the absence of events during the trial that created any suspicion of incompetence, Reese's own statements at the close of trial that indicated his awareness and understanding of its significance, and ultimately, a trust that the attorneys on both sides and the trial court itself would have exercised their duties in good faith had bona fide doubts as to Reese's competence surfaced from his behavior. Reese's deteriorated condition in the weeks following the trial could well have been the result of the trauma attendant to the conviction itself, and in light of all the indicia of competence before and during trial, that explanation is much the more plausible.

The State of Florida had a strong social interest in putting Reese to trial, and an equally strong interest in insuring that his trial be fair. Florida provided Reese with the resources of medical professionals to aid in his diagnosis and his treatment, and it followed extensive medical and legal review procedures before finally arriving at the conclusion that Reese was sufficiently competent to be tried. Mental illness is not required by any dictates of nature to conform to the neat definitions of sanity and competence created by the law, and no court can ever know to a certainty that a defendant such as Reese truly understood the criminal process to which he was subject. But certainty is not the standard for determinations of competence any more than for determinations of guilt. Informed by a consensus of medical opinion and his own judicial experience, the trial court found that Reese was competent. The uncertain diagnosis of one member of an uncertain profession made weeks after the trial is too pale a shadow to darken that judgment.

AFFIRMED.