Edward BEESLEY, Petitioner,

v.

Harold J. SMITH, Warden, Attica Correctional Facility, Respondent.

No. 82 Civ. 6221(MEL).

United States District Court,
S.D. New York.

March 19, 1984.

The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner; Henriette E. Hoffman, New York City, of counsel.

Robert M. Morgenthau, Dist. Atty. for New York County, New York City, for respondent; Norman Barclay, Phyllis A. Monroe, Asst. Dist. Attys., New York City, of counsel.

LASKER, District Judge.

Edward Beesley petitions for a writ of habeas corpus to set aside a judgment rendered July 17, 1967 by which he was convicted, upon a plea of guilty, of manslaughter in the first degree, under New York Penal Law § 1050.[1] Beesley was sentenced to an indeterminate term between ten and seventeen and one-half years. He is now on parole after having served fifteen years of his sentence.

Beesley alleges that he was not legally competent to enter the 1967 plea. He contends that his conviction was unlawful because the trial judge failed to order a competency hearing *sua sponte* before accepting the plea or before imposing sentence. Beesley also argues that his alleged incompetence at the time of the plea itself renders the conviction unlawful. The petition is denied.

## I.

On April 7, 1967, Beesley fatally shot Arthur Hayes and wounded Raymond De-Coste. Earlier that morning he had purchased a rifle and ammunition, then went home to his apartment at 349 West 85th Street and began to shoot at pigeons flying outside the window of his apartment on the sixth floor.[2] Beesley claims that the two men were shot when he aimed and shot at pigeons on the street.[3] Following his arrest, Beesley described the events of the shootings when interviewed by Assistant District Attorney Gerald Ryan. An indictment was filed on April 27, 1967 charging petitioner with murder in the first degree and attempted murder in the first degree.

On June 22, 1967 New York Supreme Court Justice Mitchell Schweitzer accepted a plea of guilty to the reduced charge of manslaughter in the first degree. On July 17, 1967 Justice Schweitzer sentenced peti-

---

1. Section 1050 provided, in pertinent part:
   "Such homicide is manslaughter in the first degree, when committed without a design to effect death:
   1. by a person engaged in committing, or attempting to commit, a misdemeanor, affecting the person or property, either of the person killed, or of another ..."

Section 1051 provided that manslaughter in the first degree was punishable by imprisonment of not more than twenty years.

2. Transcript of Interview with District Attorney Gerald Ryan dated April 7, 1967 at 5–7.

3. *Id.* at 7, 24.

tioner to the term ten to seventeen and one-half years.

Before sentencing, Dr. Matthew Levine, Senior Psychiatrist and Dr. Emanuel Messinger, Psychiatrist-in-Charge at Bellevue evaluated petitioner as being "without psychosis." [4] The evaluation stated that

"[t]hroughout the [mental examination] interview he was at ease and answered questions relevantly and was quite spontaneous. He showed a friendly attitude toward the examiner. There were no abnormalities in his thought processes elicited."

On July 28, 1967 petitioner was evaluated at Sing Sing Prison. The evaluation indicated that petitioner was of average intelligence and did not mention the existence of any mental disorder although space was provided on the form for comments regarding mental disorder. [5]

On September 9, 1967 petitioner was examined for a "psychiatric classification report" by Dr. Paul Agnew at Clinton Prison. In this report petitioner was diagnosed as being "without psychosis" and as "evidenc[ing] no signs or symptoms requiring psychiatric treatment at this time." [6]

Several weeks later, following an incident in the prison yard in which Beesley had attempted to lift a large rock and had explained to prison guards that he was lifting the rock in order to get exercise, Dr. Agnew diagnosed petitioner as paranoid schizophrenic and recommended that he be transferred to Dannemora State Hospital for treatment. [7] In the psychiatric examination petitioner told Dr. Agnew that he was "depressed around a big crowd", that he felt the other prisoners were out to get him, and that he in fact heard voices saying "we're going to get him." Dr. Agnew did not express an opinion in this report as to whether petitioner was competent or incompetent in June or July 1967.

On November 8, 1967, on admission to Dannemora State Hospital, petitioner was diagnosed as suffering from "schizophrenia, paranoid type." He was similarly diagnosed on numerous other occasions between November 1967 and September 1981. [8] Over these years petitioner was continuously in and out of state mental facilities, frequently saw prison or hospital psychiatrists, and was periodically prescribed psychotropic drugs. He suffered periodically from delusions and from auditory and visual hallucinations. During the period some of the psychiatrists who examined Beesley expressed the opinion that he might have been feigning symptoms in order to avoid placement in the general prison population or to obtain drugs. [9]

---

**4.** Letter from Drs. Levine and Messinger to Justice Schweitzer dated July 10, 1967. It appears that Dr. Levine performed the evaluation. Dr. Messinger's name appears on the signature line as "Psychiatrist-in-Charge"; Dr. Levine signed the report. This letter is hereinafter referred to as the Levine-Messinger letter.

**5.** Sing Sing Prison Psychologist's Examination Report dated July 28, 1967 (unsigned).

**6.** Clinton Prison Psychiatric Report dated September 8, 1967.

**7.** Clinton Prison Psychiatric Report by Dr. Agnew dated October 21, 1967.

**8.** Including January 6, 1970, October 1, 1970, October 31, 1970, November 19, 1970, March 22, 1971, May 27, 1972, September 26, 1973, and September 15, 1981.

**9.** See, e.g., Green Haven Correctional Facility Psychiatric Report of September 22, 1973 by Dr. Seymour Feldman, Psychiatrist ("Patient is again hysterical today, begging to be released from A Block to the population or to be sent to Matteawan. However, he is never satisfied no matter where he is transferred, and is merely trying to manipulate his situation. He has enumerable [sic] transfers."); Auburn Correctional Facility Psychiatric Report of January 19, 1975 by Dr. Antonio Luque, Psychiatrist ("At the interview ... there was no evidence of gross psychotic symptomatology. He appears to be a rather manipulative individual who is dependent upon the hospital environment and does whatever he can to be transferred there."); Attica State Penitentiary Psychiatric Report of July 18, 1975 by Dr. Ulo Roorand, Psychiatrist ("The inmate is still in the Observation Gallery. Today he changes his story around completely, doesn't offer any complaints about being depressed or hearing voices and pleading to be put back in to the population because he allegedly cannot take being locked up in a cell. He also claims that he rather would take Thorazine instead of Mellaril. He still inquires about his chances of getting to Matteawan but he seems to

## II.

Beesley did not appeal his conviction. In April, 1970, while committed to Dannemora State Hospital, he petitioned for a writ of error coram nobis in which he claimed, *inter alia*, that he had not received a competency hearing. Justice Schweitzer denied the petition under the authority of *People v. Booth*, 17 N.Y.2d 681, 269 N.Y. S.2d 457, 216 N.E.2d 615 (1966), which holds that a petitioner confined to a mental institution is incompetent to petition for a writ of error coram nobis until he is adjudged mentally competent. The petition was denied without prejudice to its renewal because petitioner was then confined to Dannemora State Hospital. Renewal petitions for a writ of coram nobis filed in April 1971, October 1971, April 1972 and November 1972 were similarly denied. In June 1974 Beesley filed a petition for a state writ of habeas corpus, but withdrew the application in August 1974.

In April 1975 Beesley filed another application for a writ of error coram nobis on the grounds that the trial court had failed to order a competency hearing before accepting his plea. Alternatively, petitioner requested an evidentiary hearing to determine whether or not he had been competent to enter his plea in 1967. Justice Rosenberger found that Beesley's mental history raised questions as to petitioner's competency at the time of the plea. The Judge assigned counsel and ordered that a hearing be held to determine Beesley's mental competence at the time of his plea and sentence.

In September 1976 a competency hearing was held before Justice Rothwax. The sole testifying witness was Jack Hoffinger, petitioner's trial attorney. Mr. Hoffinger testified that he had had no difficulty communicating with petitioner, at or around the time of the plea, that his notes of their interviews indicated that he and petitioner had communicated fairly well, that his notes did not reveal any doubt about petitioner's competence, and that he did not recall that there had been anything inappropriate or unusual in petitioner's behavior or speech.[10] His records indicated that he never considered requesting a competency evaluation of petitioner.[11]

The evidence before Justice Rothwax also included the plea and sentence minutes, the transcript of petitioner's interview with District Attorney Ryan, and petitioner's extensive medical records, including the evaluation of petitioner by Drs. Levine and Messinger at Bellevue, the two reports by Dr. Agnew at Clinton Prison, the Sing Sing Report and the report on petitioner upon admission to Dannemora. As set forth above, petitioner's medical records indicated that immediately before and after his conviction he was evaluated as being without psychosis and in no need of psychiatric medical treatment. The plea and sentence proceedings' transcripts revealed that Beesley's demeanor at those proceedings was unremarkable. He had merely answered the questions asked of him yes or no. Justice Rothwax concluded that petitioner had not proved by a preponderance of the evidence that he was legally incompetent to enter his plea.

be rather resigned to the fact that he cannot manipulate his way out of his present predicament [sic]."). *See also* the following reports which similarly conclude that petitioner seemed to be using his symptoms to manipulate his way out of the prison population and into hospital facilities where he felt more comfortable: Green Haven Correctional Facility Psychiatric Report of July 1, 1973 by Dr. Seymour Feldman, Psychiatrist; Auburn Correctional Facility Psychiatric Reports by Dr. Antonio Luque, Psychiatrist dated March 23, 1975 and June 16, 1975; and Attica State Penitentiary Psychiatric Reports by Dr. Harry Rubenstein of July 21, 1975 and by Dr. Ulo Roorand of August 14, 1975.

*But c.f.*, Green Haven Correctional Facility Psychiatric Report of June 21, 1975 by Dr. Seltzer ("Complaints of auditory hallucinations and fear of being harmed by the inmates. Wanted transfer to Matteawan. I do not believe that patient is malingering. I do feel that he probably does decompensate in the extending experiences, hallucinations and paranoid delusions.").

**10.** Transcript of 1976 competency hearing before Justice Rothwax at 12, 16–22.

**11.** *Id.*

The present petition for a federal writ of habeas corpus was filed in June 1982 under 28 U.S.C. § 2254.

## III.

As a threshold matter, petitioner must have exhausted his available state court remedies before he can seek a federal writ of habeas corpus. 28 U.S.C. § 2254(b), (c). The State asserts that Beesley has not exhausted his state court remedies because he has not fairly presented his factual claims to the state courts.

■ Exhaustion of state court remedies occurs if the state court is afforded a fair opportunity to review a petitioner's allegations that his federal rights have been violated. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In order to meet the requirement that his claim have been "fairly presented" to the state courts, *Picard*, 404 U.S. at 275–76, 92 S.Ct. at 512–13, petitioner must have set forth in state court all of the essential factual allegations asserted in his federal habeas petition; he must also have placed before the state court arguments based on essentially the same legal doctrines asserted in his federal habeas petition. *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 191–2 (2d Cir.1982).

■ The parties agree that Beesley has fairly presented his federal legal claims to the state courts. The state contends, however, that he has not fairly presented his factual claims to the state courts because he never put in evidence in the state courts the bulk of the medical records upon which

he premises his claim of legal incompetence.[12] The state argues that these records are material because they include "heretofore undisclosed evidence of petitioner's two admissions to Bellevue preceding his conviction and the volume of his post-conviction medical records which continue through 1981."[13]

Beesley correctly asserts that all pertinent medical records were presented to the state court in 1976, when Justice Rothwax held a competence hearing. With regard to the "heretofore undisclosed evidence of petitioner's two admissions to Bellevue prior to his conviction", Beesley need only have presented the fact of these admissions to the state court if he relies on them in his federal action, for he need only "have set forth in state court all of the essential factual allegations asserted in his federal petition" including all *"material* factual allegations." (Emphasis added.) *Daye*, 696 F.2d at 191. Because Beesley does not rely on the fact of these admissions to Bellevue in his petition to this court, they are not material.

Since his petition here is based upon allegations that his post-conviction medical history proves his incompetence to have entered a guilty plea in 1967, since the pertinent medical records covering his post-conviction medical history were presented to the state court in 1976, and since petitioner does not assert that his pre-conviction admissions to Bellevue are relevant either to his right to a pre-conviction competency hearing or to the validity of the 1976 state competency determination, petitioner has fairly presented the factual grounds of his federal claims to the state court and has exhausted his remedies with regard to his

**12.** Respondent's Memorandum in Opposition to Petition for Writ of Habeas Corpus at 18.

**13.** *Id.* In 1963 petitioner was brought from Manhattan Children's Court to Bellevue Hospital where he stayed for approximately one month before being sent to the Warwick School. His diagnosis at the time was psychoneurosis, mixed obsessive-compulsive depressive. September 16, 1983 letter of Mark McDougal. Petitioner was next evaluated in early 1966, prior to sentencing in an unrelated case and was found to be without psychosis. January 11, 1966 letter of Dr. Emanuel Messinger. Later that year, while serving his sentence at Rikers Island, he was admitted to Bellevue for about one month and was diagnosed as having a "schizophrenic reaction." September 16, 1983 letter of Mark McDougal.

claim of legal incompetence at the time he entered his plea in 1967.[14]

## IV.

Beesley's petition raises two questions: first, whether the trial court should have ordered a competency hearing *sua sponte* before accepting petitioner's guilty plea or before imposing his sentence, and second, whether, notwithstanding his alleged right to a pre-conviction competency hearing, petitioner was in fact incompetent at the time of his plea and sentencing. Since, as indicated below, this court must defer to Justice Rothwax's 1976 finding of competency, and since Justice Rothwax found that Beesley was in fact competent at the time of conviction, petitioner's claim that he was entitled to a pre-conviction competency hearing is not addressed.

The conviction of an accused who lacks the capacity to understand the nature of the proceedings against him or to confer effectively with his counsel violates the due process clause of the Fourteenth Amendment. *See Drope v. Missouri,* 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975); and *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). A criminal defendant is legally competent to stand trial if he has sufficient ability to consult with his attorney with a reasonable degree of rational understanding and if he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

When a defendant enters a plea of guilty, he waives various constitutional rights including the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. *Chavez v. United States,* 656 F.2d 512, 519 (9th Cir.1981). To waive these rights, a defendant must have the ability "to make a reasonable choice among the alternatives presented and to understand the nature

and consequences of the waiver." *Chavez,* 656 F.2d at 518; *cf. Saddler v. United States,* 531 F.2d 83 (2d Cir.1976).

## V.

Beesley argues that evaluations of his mental health made within months of his conviction and which diagnosed him as psychotic, viewed cumulatively with the evidence before Justice Schweitzer, raise a strong likelihood that he was incompetent to enter a guilty plea in June 1967.

As described above, petitioner was adjudged competent to have entered his plea in a state competency hearing conducted by Justice Rothwax of the New York Supreme Court on September 9, 1976, and the state court's findings of fact are presumed by this court to be correct. 28 U.S.C. § 2254(d); *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Beesley contends, however, that his case falls within four of the exceptions, specified in 28 U.S.C. § 2254, to the presumption of correctness of state court determinations of fact. In particular, he argues that: the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing, 28 U.S.C. § 2254(d)(2); the material facts were not adequately developed at the state court hearing, 28 U.S.C. § 2254(d)(3); he did not receive a full, fair and adequate hearing in the state court proceeding; 28 U.S.C. § 2254(d)(6); and the state court's findings of fact are not fairly supported by the record as a whole. 28 U.S.C. § 2254(d)(8).

Beesley points out that in the 1976 competency hearing the court failed to appoint an independent psychiatrist to evaluate his medical history and condition at the time of his hearing and that the court also failed to call as witnesses Dr. Messinger, the psychiatrist who found petitioner to be without

---

**14.** Petitioner does not contend that his medical history after 1976 is material to the competency issue. Petitioner's Reply to Respondent's Memorandum in Opposition at 2. Rather, he responds that Justice Rothwax had all of petition-er's medical records up to the date of the state competency hearing, and that there was no significant change in petitioner's condition after 1976. *Id.*

psychosis just after the plea was entered, and Justice Schweitzer, the sentencing judge. Beesley asserts that as a result he did not receive a full, fair and adequate hearing in the state court, 28 U.S.C. § 2254(d)(6), because the fact finding procedure was not adequate, 28 U.S.C. § 2254(d)(2), and the material facts were, therefore, not adequately developed. 28 U.S.C. § 2254(d)(3).

■ While it may have been appropriate for Justice Rothwax, on his own, to have called as witnesses Dr. Messinger and Justice Schweitzer and to appoint an independent psychiatrist to evaluate petitioner's medical history and competency at the time of the hearing, he had no obligation to do so. The state persuasively argues that Beesley's unsupported assertion that unspecified material facts might have been developed had certain witnesses testified is not sufficient to overcome the presumption that the state court's findings were correct.

Beesley also claims that the state court's finding of competency is not fairly supported by the record as a whole. *See* 28 U.S.C. § 2254(d)(8). His view is that Justice Rothwax discounted repeated post-conviction diagnoses, made within months of petitioner's plea, of paranoid schizophrenia. The judge also purportedly discounted a history of delusions and hallucinations which began to develop within months after petitioner's plea. Instead, petitioner contends, Justice Rothwax favored the Levine-Messinger report and the Justice's own conclusion from the medical records that petitioner was malingering.[15]

■ A federal habeas court cannot reject a state court's factual findings simply because it disagrees with the state court's conclusion. *Marshall v. Lonberger, supra.* Rather, it must find that the state court's

findings are "not even fairly supported by the record." *Id.*[16]

■ While, as petitioner contends, a diagnosis of mental illness a short time after conviction may raise a question as to a defendant's competence to have stood trial or to have entered a guilty plea, *see e.g., Pride v. Estelle,* 649 F.2d 324, 326 at n. 3 (5th Cir.1981); and *Reese v. Wainwright,* 600 F.2d 1085, 1093 (5th Cir.1979), the record here fairly supports Justice Rothwax's conclusion that petitioner was in fact competent at the time of the plea.

Petitioner relies on *Pride v. Estelle, supra,* for the proposition that his commitment several months after conviction is strong evidence of his incompetence at the time of the conviction. In *Pride* an examining psychiatrist had testified that the habeas petitioner could not have been competent to stand trial because of the nature of his illness. 649 F.2d at 326. Here, however, the record shows that the evidence which was before Justice Rothwax supported the conclusion that, unlike *Pride,* no continuity of incompetence or mental illness was established.[17] Petitioner was not found mentally ill until November 1967. Between the conviction and the commitment, petitioner was evaluated on three separate occasions on which he was found to be without psychosis and in no need of psychiatric treatment. The Levine-Messinger letter, written within days of the plea, clearly stated that "no abnormalities in his thought processes [were] elicited." Evaluations made during the first year of his commitment to Dannemora indicated that petitioner's commitment was prompted by a "psychotic episode" which occurred "just prior to his admittance" and that he only "occasionally disintegrat[ed] further into paranoid psychosis at points of particular stress."[18]

---

**15.** Petitioner's Memorandum in Support at 19.

**16.** The record in the present case reveals no reason to disagree with, and in fact strongly supports Justice Rothwax's conclusion that petitioner was competent.

**17.** *See* September 9, 1976 Competency Hearing Transcript at 27–33.

**18.** Dannemora Clinic Summary of May 15, 1968 by Dr. William A. Woodruff; Dannemora Hospital Improvement Program Report of August 13, 1968 by Dr. Frederick C. Thorne.

734

*Reese v. Wainwright, supra,* is a case nearer to Beesley's. There the court concluded that the petitioner's psychological condition several weeks after the trial did not indicate that he was incompetent during the trial. Rather, in light of the indicia of competence before and during the trial, the court found it more probable that the petitioner's psychiatric problems began following the conviction. 600 F.2d at 1094. Similarly, in the present case Justice Rothwax concluded that petitioner was more likely than not competent at the time of the plea and sentencing notwithstanding his subsequent psychiatric history. He reached his conclusion after considering all the evidence before him, including the testimony of Mr. Hoffinger, the transcript of petitioner's interview with the Assistant District Attorney, petitioner's demeanor at the plea and sentence proceedings as represented in the transcripts of those proceedings, the pre- and post-conviction psychiatric evaluations, and petitioner's psychiatric history as represented in the voluminous medical records covering the period 1967 through 1976.[19]

Since the record fairly supports Justice Rothwax's conclusion that petitioner was competent when he entered his plea, the state court's finding of competency is presumed to be correct.

For the foregoing reasons, petitioner's request for a federal competency hearing, and, alternatively, for the issuance of a writ of habeas corpus is denied. Certificate of probable cause is granted.

It is so ordered.

---

19.   *See* September 9, 1976 Competency Hearing   Transcript at 27–33.