914 F.2d 257
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John Bernard McGEE, Petitioner-Appellant,
v.
Robert G. REDMAN, Warden, Respondent-Appellee.
 No. 89-1061.
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1990.
 
 Before MERRITT, Chief Judge; MARTIN and DAVID A. NELSON, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Petitioner John McGee, convicted of murdering his wife, appeals the denial of a writ of habeas corpus. He claims that the District Court violated the Magistrate's Act, that he was incompetent to stand trial, and that his trial attorney provided constitutionally inadequate assistance by failing to raise insanity as a defense. Because we find that the District Court properly reviewed the magistrate's proposed disposition of the case, that the state's determination of petitioner's competence is not subject to constitutional attack, and that petitioner's attorney did not provide constitutionally ineffective assistance of counsel, we affirm the decision below.
 
 I.
 
 2
 Petitioner has a long history of mental problems. In 1967, the United States Army honorably discharged petitioner from service in Vietnam because of his psychosis. Many of his veterans benefits were held in trust for him by a friend who was an attorney, Wilfred Rice. In 1973, petitioner killed a man on the streets of Detroit, and was held not guilty by reason of insanity. The state held him at the Center for Forensic Psychiatry for treatment, where he was seen by Dr. Charles Tappin. This continued until 1975, when petitioner received a hearing on his sanity because the Michigan Supreme Court had held that a not guilty by reason of insanity verdict does not justify limitless incarceration. People v. McQuillan, 392 Mich. 511, 221 N.W.2d 569 (1974). When the prosecutor sought McGee's further incarceration, his attorney, Sheldon Halpern, successfully petitioned the judge to exclude certain mental hospital records on the ground of doctor-patient privilege. Because the state did not meet its burden of proof, it released petitioner.
 
 
 3
 Later that year, petitioner beat his wife until she died. The victim's 12-year old daughter Fonda witnessed the killing and called the police. When the police arrived, petitioner told them that his wife was sleeping and did not need an ambulance. He then let them into the apartment, but first covered the corpse with a blanket. The police found the body lying in a pool of blood and called an ambulance. Petitioner subsequently admitted that he did the crime to an ambulance attendant and a police officer. An investigation of the apartment turned up an open suitcase with neatly packed men's clothing, which raises an inference that petitioner planned to leave after the attack.
 
 
 4
 Preliminary proceedings began before Washtenaw County Circuit Judge Deake. Originally, Mr. Halpern represented petitioner, but he did not appear at the arraignment, and had withdrawn because he could not secure payment for other legal services that he had provided for petitioner. The court appointed a public defender, Daniel Bambery, to represent petitioner at the arraignment. When Mr. Bambery alluded to the possibility of raising an insanity defense, petitioner addressed the court to disavow the defense.
 
 
 5
 Judge Deake held a competency hearing sua sponte on January 22, 1976. The evidence consisted of the testimony of a psychiatrist, Dr. Dennis Koson, who stated that he could not determine petitioner's competence because petitioner invoked his privilege against self-incrimination and refused to speak with him. What little conversation Dr. Koson did have with petitioner revealed that petitioner had a reasonable explanation of his position. Judge Deake found petitioner competent. He later withdrew from the case and it was assigned to Judge Ross Campbell.
 
 
 6
 Judge Campbell held another competency hearing sua sponte in July 1976. Before this hearing, the court appointed Glynn Barnett to represent petitioner because petitioner could not pay Mr. Halpern and would not cooperate with Mr. Bambery. Because of a number of reports and expert and lay testimony about petitioner's competence, Mr. Barnett discussed the possibility of raising an insanity defense at least three times with petitioner, who vigorously objected to it. He claimed that his last acquittal for insanity was only because he had fooled everyone, and that he was not going to use it again.
 
 
 7
 At the second competency hearing, Judge Campbell received by stipulation a report by Dr. Phillip Margolis. Dr. Margolis concluded that petitioner was competent to stand trial. The trial took place in October 1976, and the jury convicted petitioner of murder.
 
 
 8
 The District Court also held a hearing on petitioner's competence at the time of the trial. Messrs. Halpern, Bambery, and Barnett all testified that petitioner seemed competent at the time of the trial. Dr. Margolis also testified and explained his earlier report. He stated that petitioner discussed legal theories about his defense ably, and adequately explained his reasons for not raising the insanity defense. By telephone deposition, Dr. Tappin also testified. He had visited and treated petitioner at the Washtenaw County Jail during the pretrial proceedings. Although he considered petitioner's competence questionable, he admitted that a diagnosis would be difficult to obtain because he had never examined petitioner long enough. Dr. Tappin also stated that petitioner was oriented to his place, the nature of his confinement, and the consequences of his act.
 
 
 9
 After exhausing his state remedies, petitioner sought federal habeas relief. The magistrate reviewed the evidence and held that petitioner was competent at the time of his trial. She also held that Mr. Barnett had provided ineffective assistance of counsel but that this ineffective assistance did not prejudice petitioner. After receiving the magistrate's report and petitioner's objections, the District Court adopted the report and entered an appropriate order denying the writ of habeas corpus. It is from that order that petitioner appeals.
 
 II.
 
 10
 Petitioner claims first that the District Court violated the review portion of the Magistrate's Act, 28 U.S.C. Sec. 636(b)(1) (1988). That section provides that a district court, after receiving the magistrate's report and recommendation and the parties' objections, "shall make a de novo determination of those portions of the report or specified proposed recommendations to which objection is made." 28 U.S.C. Sec. 636(b)(1) (1988). Petitioner claims that the District Court did not conduct de novo review because its opinion does not say that the review was de novo and because of certain circumstantial evidence, notably the time elapsed between the filing of the objections and the District Court's order entering the recommendation.
 
 
 11
 We find no merit in this claim. So long as the District Court's order indicates that the District Court conducted de novo review, and so long as there is no significant evidence to the contrary, we will find no procedural irregularity. Tuggle v. Seabold, 806 F.2d 87, 90 (6th Cir.1986). Here, the District Court stated that it had "an opportunity to review the record in detail," J.A. at 28, and canvasses petitioner's two objections to the report. We reject petitioner's suggestions that the words "de novo review" have some magical power, and we are loathe to reverse a district court order merely because it issued too quickly in the opinion of a party.
 
 III.
 
 12
 Petitioner's second claim is that the state trial court violated petitioner's right to due process by failing to hold him incompetent to stand trial. The right he asserts involves mostly the procedural right to a hearing if reason exists to doubt a defendant's competence. The Supreme Court has held that the "test [for whether an accused is competent] must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).
 
 
 13
 An accused has a right to a hearing to determine his or her competence. Pate v. Robinson, 383 U.S. 375 (1966). If counsel does not raise the issue and the trial court suspects the defendant's competence, the trial judge should conduct the hearing sua sponte. See id. at 385. In this hearing, the trial judge must evaluate the defendant's behavior, medical history, and testimony from experts, Reese v. Wainwright, 600 F.2d 1085, 1091 (5th Cir.), cert. denied, 444 U.S. 983 (1979), but the defendant does not have a right to an omniscient psychiatrist. Id. at 1092. After a competency hearing, the trial judge has a continuing duty to monitor the defendant's demeanor during the proceedings and ensure that the defendant has not cracked under the strain of the trial. Drope v. Missouri, 420 U.S. 162, 181 (1975).
 
 
 14
 A federal court reviewing state court competency hearings must presume the finding of competence to be correct. 28 U.S.C. Sec. 2254(d) (1988). The petitioner for habeas relief must produce facts "that positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his [or her] actual competency during trial." Reese v. Wainwright, 600 F.2d at 1091. A writ of habeas corpus may issue only if the petitioner's behavior casts "real doubt" on the state court's competency determination. Osborne v. Thompson, 610 F.2d 461, 462 (6th Cir.1979) (per curiam).
 
 
 15
 The petitioner in this case shows nothing in the record that convinces us either that we should not presume the state court competency proceedings correct or that raises "real doubt" about petitioner's competence at trial. A state probate proceeding early had pronounced petitioner sane. The state court received under stipulation Dr. Margolis's report stating that petitioner was competent to stand trial. While another psychiatrist, Dr. Tappin, had more contact with petitioner, he did not appear at the competency hearings and no one sought his advice. If petitioner's former doctor believed him to be clearly incompetent, he probably would have made more of an effort to alert the trial court. The District Court examined the lay testimony of several witnesses, including some of petitioner's former attorneys, all tending to prove petitioner's competence at the time of trial. Petitioner's behavior at trial also raises no "real doubt" about petitioner's competence. We must, therefore, presume the outcomes of these proceedings to be correct pursuant to 28 U.S.C. Sec. 2254(d).
 
 IV.
 
 16
 Petitioner claims lastly that his trial attorney, Mr. Barnett, provided him ineffective assistance. Petitioner claims that Mr. Barnett should have conducted an independent examination of petitioner's sanity at the time of the murder, and that Mr. Barnett should have used an insanity defense despite petitioner's clear desire not to enter an insanity plea.
 
 
 17
 Normally, we evaluate ineffective assistance of counsel claims under the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). However, these facts do not present any inadequate performance by Mr. Barnett. The trial court held petitioner competent and, as stated above, there is no real doubt about petitioner's competence at trial. If petitioner was competent to stand trial, he was competent to enter a guilty plea, see Pate v. Robinson, 383 U.S. at 384, or to make the less drastic strategic determination about what defense to employ. The ability to assist one's lawyer and make such choices forms the touchstone for competence. Dusky, 362 U.S. at 402. Because petitioner was competent at trial, Mr. Barnett had a professional obligation to respect petitioner's wishes not to defend himself on grounds of insanity. Petitioner repeatedly advised his lawyer against the insanity defense, and therefore it can hardly be said that his lawyer's representation was rendered ineffective when he followed his client's instructions.
 
 V.
 
 18
 Accordingly, the judgment of the District Court is AFFIRMED.